By the Court. Duer, J.
with whom Campbell, J., concurred, delivered orally his opinion that a new trial ought to be granted. The grounds of this decision are those stated in the preliminary abstract.
Paine, J., dissented, and.delivered the following opinion:— On the trial of this cause, I certainly entertained and expressed a very decided opinion that the decree in Connecticut could not be used as a defence to this action. It struck me that a judgment of this court could not be impaired by anything done by a court sitting out of this state; and that to admit the decree from Connecticut as an estoppel, would be, in effect, to assent to a judgment of this court’s being vacated or set aside by the courts of that state. The views- which I took on the trial have not been at all changed, but rather confirmed, by the argument on appeal, and subsequent examination.
There are three objections to this Connecticut decree’s being admitted as an estoppel, or indeed as evidence at all. 1st. The defence which it is offered to sustain, cannot be set up to this action. 2d. It furnishes no proof of the defence for which it is *147 offered; and 3d. The decree in Connecticut is void, because it was pronounced in violation of the constitution of the United States. I will consider these objections in their order.
First: The answer sets up, that the judgment sued upon was obtained by fraudulent practices of the attorney and his client, in the course of the suit in which it was recovered, upon a claim in itself fraudulent and unfounded. The answer, therefore, would seem to impeach the judgment upon the merits, as well as upon the. ground of fraudulent practice in the suit in which it was recovered. But the counsel for the defendant seemed to think that there was a distinction between a plea impeaching it upon the merits or for fraud on the trial, and a plea impeaching it for fraudulent practice in its recovery ; and defended the answer as being a plea of the latter kind; and although I know of no such distinction for this purpose, either at law or in equity, yet I shall consider his case in the light in which he contended that it was maintainable.
The alleged fraud in the recovery of the judgment is, that the plaintiff’s attorney, after his arrest, promised the defendant, who resided in Connecticut, and was here transiently, that he would not proceed with the suit without giving him notice; that the defendant, relying upon this, made no defence; but that the attorney, without giving him any notice, proceeded to take an inquest by default against him, and entered judgment. The question, therefore, is, whether this fraud can be set up by way of plea or answer, as a bar to an action on the judgment.
, Courts of law have always upon motion exercised the most unlimited equitable powers over their own practice and proceedings. To set aside judgments or other proceedings upon motion, as irregular or fraudulent, is of such frequent occurrence, as to form a very considerable part of their business. A know-, ledge of their own rules and practice, and of the proceedings immediately before them, enables them to correct any irregularity or malpractice, with much greater advantage and justice, than could be done by any other tribunal, even within the same jurisdiction. It has, therefore, become an established rule, that courts within the same jurisdiction have no power, in this respect, over each other’s proceedings. It is true that courts of equity of the same state do"exercise a jurisdiction, on the' ground. *148 of fraud, with respect to judgments recovered in courts of common law; but this is not done in the way of correcting, vacating, or impairing the judgment, but by arresting a party through his conscience, and' restraining him from committing further fraud by any attempt to-enforce the judgment.
This has always been the law of this state, and of every country living under the system of the common law. And it is still the law, unless the law, in this respect, has been changed by the alterations lately made in our courts and practice, by the constitution and Code.
The constitution has abolished courts of equity, and vested their powers in the courts of common law. But I do not imagine that it has thereby confounded the established distinctions between legal and equitable proceedings. Much less do I suppose that it has enabled courts of law, with their newly conferred equitable powers, to do what courts of equity before never did, or that it has in any manner changed in courts of law, the mode of exercising those equitable powers, which they were before in the daily habit of exercising.
How, although courts of equity have laid hold of the consciences of parties and restrained them from enforcing fraudulent judgments, when their aid has been directly invoked for that purpose upon a suitable case presented to them, yet I am not aware that they have ever allowed a judgment to be impeached upon the ground of fraud, when their aid has been sought to enforce it. To take the familiar case of a creditor’s bill, brought to have execution of a judgment, has a defence ever been allowed to such a bill, that the judgment was obtained by fraud ? I think it never has been, and that, upon principle, it never could be done.
Whatever equitable powers, then, the constitution has conferred upon courts of law, it has not made that a defence, which would not before have been a defence in a court of equity. For it has merely transferred to the -former the powers and jurisdiction of the latter. I think it will hardly be contended, that the constitution, by making this transfer, has in any respect changed the systems of equity and common law, as they before existed, or the modes of proceeding.
The changes introduced by the Code, hosvever, are of a *149 different character. By abolishing all distinctions between actions at law and suits in equity, and the forms of all such actions and suits, and all the forms of pleading heretofore existing, it has caused not a little trouble and perplexity among the profession, on the subject of pleading. This has been still further increased by that provision which directs, that issues of fact, in actions for the recovery of money only, or of specific real or personal property, shall be tried by a jury, and all other issues by the court. Formerly, all issues in equity were tried by the court, unless the court ordered a trial by jury; but by our present practice many of those issues must be tried by a jury. A still greater difficulty occurs in actions for the recovery of money, or specific real or personal property, where a defence is set up which was formerly of exclusively equitable cognisance; for the Code has made no special provision for such a case. But it may be doubted whether rights, which were formerly of exclusively equitable cognisance, and which now, if attempted to be asserted by action, must be tried by the.court, can, if set up as matters of defence, be tried by a jury.
It is to this state of doubt and uncertainty, consequent upon so entire a change, that we are probably indebted for the defence set up in this action. Such a defence, before the Code, would never have been thought of by the learned counsel who drew the answer in this action. It is not strange, that after the destruction of all our old guides in practice and pleading, such a defence should be attempted; but unless we are to consider the established principles, as well as the forms of law, as having been subverted by.the Code, I cannot think that such a defence can be maintained.
Before the Code, the only defence which could have been pleaded in this action, would have been nul tiel record. Nil debet, or any defence upon the merits, or which went to question the conclusiveness of the record, would have been entirely inadmissible. The only issue to be tried, the issue of mil tiel record, would have been tried by the court. The record being in this court, the court would have tried it by inspection, and no other evidence on the part of the plaintiff or defendant could have been offered.
These were the rules of pleading and trial before the Code, *150 and I am not aware that the Code has altered them. The Code has abolished the forms of pleading, but it has not abolished all the rules of pleading, nor the principles of law; nor has it made that a defence, which before would not have been a defence, either at law or in "equity. It has not abolished the principles, that rights secured by a judgment cannot be contested; that the evidence furnished by the record of such judgment cannot be controverted; and that on producing the record the plaintiff is entitled to judgment. FTor has it abolished or altered the rule of pleading, that in an action on such judgment nothing can be pleaded except nul tiel record, or that there is no such record. For this rule is only a corollary from the legal principles I have just referred to. The judgment being final and conclusive, it necessarily follows that the law will allow the defendant only to deny its existence, but not to question its force or resist its operation.
If the defendant wished to impeach this judgment for the alleged fraud, his obviously proper course was, to apply to the court, by motion, to have it set aside. There has never been any other mode of doing it, and there can, in the nature of things, be no other mode now. If the judgment was recovered by fraud, it should be set aside, and the subject matter of it should be tried over again; if it was not recovered by fraud, it should remain undisturbed, and a new trial ought not to be had. Before a second trial, therefore^ this question of fraud must be settled.
Suppose it were otherwise, and that the defendant is right in attempting, as he does, to bring all these matters, both the question of fraud and the rights of the parties upon the merits of the case itself, to trial before a jury at the same time, what would be the state of things presented on the trial? If the judgment was recovered unfairly, the whole matter should be fried over again by evidence independent of the judgment, and the judgment should not be used as evidence. If recovered fairly, then no other evidence than the judgment should be admitted. And this view is not affected by the fact that in this case there is a judgment record which is, as is alleged, conclusive evidence of the fraud, and therefore the fraud is established; for in other cases the same defence of unfairly *151 recovering the judgment may be set up, without a record to furnish conclusive evidence of it. And then, is the plaintiff to use his judgment as evidence, or not ? How is this to be determined? There are two things'to be tried; the fairness of the recovery of the judgment, and whether the judgment is right in itself. If the first should be determined in favor of the plaintiff, then all he has to do is to produce his judgment to prove his title to recover, and the defendant could not controvert it. But, if determined against him, he must resort to other evidence subject to be contradicted by, the defendant. Now, how is it to be ascertained which course is to be taken? Is the jury to go out and pass upon the question of fraud, and then come back and try the case upon the merits ? Such an arrangement would certainly betoken progress enough to satisfy any one.
If this trial had taken place, the attitude of the parties towards each other would have illustrated the inconsistency of the whole proceeding, and the utter confusion of ideas involved in it. The parties would have been armed with estoppels point to point—estoppel against estoppel. The defendant would have said, my estoppel shows that your judgment was fraudulently recovered. The plaintiff would have replied, that is no matter; my estoppel shows that you owe me the debt; that it is all right upon the merits; and to try the cause over again could do you no good, for in any event the court must render judgment in my favor. My judgment imports absolute verity as well as yours. What, then is the state of the proof? That a righteous judgment has been recovered by unfair means. Would, it be worthy the serious occupation of a court of justice to allow such a trial to proceed further ?
Secondly: none of the allegations of the answer are supported or proved by the record offered in evidence. The answer sets up fraud in the recovery of the judgment, and that only as a defence. It says nothing about its having been recovered through any mistake. It also alleges that the petition in chancery presented to the court in Connecticut stated the judgment to have been fraudulently recovered, and that the court found the facts stated in the petition to be true, as alleged in the answer, and adjudged and decreed that said *152 judgment was fraudulently recovered. How, so far from this being true, the petition stated no such thing, and the court neither found nor decreed anything of the Mnd. The only statements of the kind in the petition are, that Olney by mistake, or contriving and intending to harass and defraud the defendant, commenced his suit in this court; that in further pursuance of said mistake or design to defraud, he caused the capias to be issued; and that in further pursuance of said mistake or design to defraud he caused the suit to be returned to this court, and farther prosecuted;—and that so said defendant was, by mistake or design, deprived of all opportunity to make his defence.
The entire difference between the statements of the petition as set forth in the answer, and the statements actually made by the petition, is too obvious to require comment. The petition does not allege fraud, but either mistake or fraud; and the court finds nothing except that the facts set forth in the petition are frue—certainly this is no finding of fraud. If it is a finding of anything, it is a finding of mistake or fraud. It is therefore impossible to tell which of the two the court intended to find. The plaintiff has as much right to say that it is a finding only of mistake, as the defendant has to say it is a finding of fraud.
Finally, the court did not decree that the judgment was fraudulent, but simply decreed an injunction restraining the plaintiff from prosecuting his action upon it. The record, therefore, introduced by the defendant on the trial to prove his plea, failed to prove it in every particular.
Thirdly: The decree in Connecticut was pronounced in violation of the Constitution of the United States, and of the Act of Congress in pursuance made of it.
The Constitution provides that “ full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state; ” and authorizes Congress to “ prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof.” The Act of Congress of 26th of May, 1790 (Oh. 11), after providing for the mode of authenticating the acts, records, and judicial proceedings of the states, declares, that “ the said records and judicial proceedings, authenticated as aforesaid, shall have such faith *153 and credit given to them, in every court within the United States, as they have by law or usage in the courts of the state from whence the said records are or shall be taken.”
In several particulars, these provisions of the Constitution and Act of Congress have been much contested in various states of the Union. The principal question has been whether a judgment recovered in a court having no jurisdiction of the person by the service of process was within these provisions. In discussing this question in the earlier cases, the just distinction between foreign judgments and judgments of states of the Union was by no means as clearly understood as it is now; and the courts manifested a disinclination to make any such distinction, and when compelled to do so, retraced their steps with reluctance (Starbuch v. Murray, 5 Wend. 155).
Anterior to and contemporaneously with this discussion, the question whether the merits of foreign judgments could be inquired into was much agitated in England, and a variety of opinions were entertained about it. Some of the earlier cases denied, while others maintained, that they could be. Some of the judges thought that such judgments were only prima, fade evidence, and that the defendant could show them to be wrong upon any ground; while others contended that they should be allowed to be impeached upon two grounds only—viz. a want of ' j urisdiction, and fraud—and not generally upon the merits. This last view, after a long discussion and opposite opinions, seems to have been adopted by the courts of England as the correct one. The light of this discussion, which in truth does not reach the subject as it exists under our constitution, seems to have guided our courts when the subject of state judgments came first under their consideration; and although a case never arose or has since arisen in any court where a state judgment was attempted to be impeached for fraud, yet when the legitimate ground of a want of jurisdiction was set up in .some few of the earlier cases, the courts threw out dicta, entirely obiter, that such judgments might be impeached for want of jurisdiction, or fraud; thus adopting and applying to state'judgments the rule then urged and since applied in England, as the true rule in relation to merely foreign judgments.
The true constitutional rule having become better understood, *154 and the courts generally having got over their reluctance to adopt it, where such reluctance existed, the later and better considered cases will be searched in vain for any such dicta. Hot a word about fraud is to be found in the following cases, but only about a want of jurisdiction: Aldrich v. Kinney, 4 Conn. R. 380; Wood v. Watkinson, 17 Conn. R. 500; Bissel v. Briggs, 9 Mass. R. 462; Jacobs v. Hull, 12 Mass. R. 25; Kilburn v. Woodworth, 5 J. R. 41; Robinson v. Ward, 8 J. R. 86; Dennison v. Hyde, 6 Conn. R. 508; M'Rae v. Mattoon, 13 Pick. R. 53; Moren v. Killibrew, 2 Yerg. R. 376; Gleason v. Dodd, 4 Metcalf, R. 333; Hall v. Williams, 6 Pick. R. 239; Read v. Pratt, 2 Hill, R. 64; Starbuch v. Murray, 5 Wend. R. 158; Shumway v. Stillman, 6 Wend. R. 447.
As I understand the rule now established in relation to state judgments, it is this: If there ,is a judgment, it cannot be, inquired into for any cause whatever; and, although there may have been fraud in its recovery, it is still a judgment', and not void. But if the court rendering it had no jurisdiction of the person, then there is no judgment, and the constitution of the United States does not apply. In my opinion, not an adjudged case, except the one we are considering from Connecticut, can be found against this rule as I have stated it; while many of the very highest authority can be cited in its favor.
Chief Justice Parsons, of Massachusetts, has the merit of having laid down the'rule correctly, even before it was settled by the Supreme Court of the United States. In Bissel v. Briggs (9 Mass. R. 462), he enters into a most elaborate consideration of the whole subject, discusses in its fullest extent the difference between foreign and state judgments, and concludes-by saying: “ Such judgments, so far as the court rendering them had jurisdiction, are to have in our courts full faith and credit.” “ The defendant Briggs must be considered as a party to a judgment rendered against him by a court which had jurisdiction of the cause, and of the parties to it. He cannot therefore, in my opinion, be admitted by evidence to impeach that judg__ ment, or to deny it, or in any manner to derogate from the full faith and credit to which it is entitled.”
In Starbuch v. Murray (5 Wend. 158), the court say, “ If the jurisdiction of the court is not impeached, it has the character *155 of a record, and for all purposes should receive full faith and credit.”
In Moren v. Killibrew (2 Yerg. R. 376), the court of Tennessee presents the distinction which governs these cases in a very lucid manner. The action was on a judgment from Kentucky, and the court says: “We must advert to the distinction between void and voidable, between a judgment that is irregular or erroneous, and one that is void or a nullity. The one is valid to some extent; the other is valid to no extent. Irregular and erroneous judgments are valid and good until set aside or reversed on error. Void judgments, or such as are a nullity, have no operation whatever. If the judgment of the sister state now in question is of the first class, it is evident that the courts of this state cannot give relief to the defendant, as that relief is in its nature limited to the court where the judgment was rendered, or to the revising courts of the State of Kentucky. This court confines itself within that narrow limit of inquiry, incidental from necessity to all courts which are called upon to enforce and carry into effect the judgment of some other court. That limit is an inquiry into the jurisdiction of the court rendering the judgment sought to be enforced.”
And the courts have gone so far as to hold, that even a mistake in making up the record could not be shown; so entirely obedient and unquestioning is the faith which is required by the constitutibn. In Hall v. Williams (6 Pick. R. 239), the court says: “ If it appear by the record of a judgment of a sister state, that the defendants had notice of the suit, we are inclined to think it cannot be gainsaid. For, as we are bound to give full faith and credit to the record, the facts stated in it must be taken to be true judicially; and if they should be untrue, by reason of mistake or otherwise, the aggrieved party must resort to the authorities where the judgment was rendered for redress.” A similar opinion was intimated in Reed v. Pratt (2 Hill R. 66), and Bicknell v. Field (8 Paige, 440); but this particular point can hardly be considered settled.
The case of M'Rae v. Matoon (13 Pick. R. 53) is directly in point for our purpose. In that case, under a plea of nil debet to an action on a judgment of a court of North Carolina, the defendant, on the trial, was permitted to show that the *156 judgment was recovered by fraud; the plaintiff’s attorney having stated that the action had been discontinued; and upon this issue the jury found a verdict for the defendant. The court however set aside the verdict, saying: “ The question is in substance, whether the defendant may prove under this issue, that the judgment was obtained by fraud and misrepresentation. We are entirely satisfied, that while the judgment remains apparently in full force, the defence cannot be made against it. If this were not so, there would be no end of litigation. If the first judgment were thus to be rendered void, the second is liable to the same allegation, and the third, and so on. The law would become a game of fraud, in which the greatest rogue would become the most successful player. If any proceedings have taken place in the court in ¡North Carolina which would avoid the judgment obtained against the defendant, the application must be made to the judicial courts there. But so long as the judgment remains in full force the courts in Massachusetts cannot go behind it.” Clearly, either this case is not law, or the decree in Connecticut is unconstitutional. It will be observed, that no technical objection is set up on the ground that a court of law could not entertain the defence of fraud. The reasoning of the court is, that no court of a sister state can entertain it (and see Bicknell v. Field, 8 Paige’s R. 440).
But it is necessary that I should notice the grounds upon which the decree is sustained by the Court of Errors of Connecticut, as those grounds are stated in their opinion.
One ground is, that the proceeding in Connecticut was not “an attempt to impeach the ¡New York judgment.” And the court says: “In granting an injunction against proceedings at law, whether in a foreign or domestic court, there is no difference ; the court of equity does not presume to direct or control the court of law; but it considers the equities between the parties, and acts upon the person, and restrains him from instituting and prosecuting an action” (Pearce v. Olney, 20 Conn. R. 554).
I am unable to assent to this reasoning. In the first place, it assumes, that under the Constitution of the United States, there is no difference between a court of equity in ¡New York, *157 restraining a party from proceeding in New York to enforce a judgment of a court of New York, and a court of equity in Connecticut restraining Mm from proceeding upon it in Connecticut. There is this difference at least, that the constitution cannot apply to the former case, while it may well be contended that it does apply expressly to the latter. TMs is-a naked assumption of the court, for which no reasons are given, and in support of which no authorities are cited. I shall endeavor to show that it cannot be supported either by reason or authority.
Both before and since the case of Mills v. Duryea, there has been a looseness in the language employed, in speaking of the effect to be given to judgment, under the constitution and act of Congress. It is sometimes said the courts of Massachusetts are bound to give the same effect to a New York judgment that the courts of New York would give to it. But this is not the language nor meamng of the constitution and act of Congress. Their language and meaning are, that it shall have the same effect as in the court where it was recovered; or to take the present case as an instance, that it shall have the same effect in Connecticut as it has in the Superior Court of New York, and notin a court of equity of the State of New York.
This is very clear from the language of the act. “ The said records and judicial proceedings shall have such faith and credit given, to them, in every court within the United States, as they have, by law or usage, in the courts of the states from whence the said records are or shall be taken.” In this sentence, the word “ taken,” at its close, does not relate to the antecedent word “ states,” but to the word, “ courts.” Records are said to be taken from courts, but could not with any propriety be said to be taken from a state." If the mere act of transportation had been meant, the word “ brought” would have been used. But a record cannot be taken from “ courts ” or from more than one court. The plural “ courts” was used merely because the plural “records” was used before and after; but the same meamng would have been expressed by the words, “as in the court of the state from whence said record is or shall be taken.”
The interpretation which I have put upon the act is fully *158 sustained by the construction given to it in Mills v. Duryea (7 Cranch R. 481); which case must be regarded upon this subject as the supreme law of the land. In' that case, Mr. J. Story, in delivering the opinion of the court, immediately after quoting the act in Tima vería at length,,says:' “The act declares that the record, duly authenticated, shall have such . faith and credit as it has in the state court from whence it was taken.”
That this construction given to the act by the court was not a careless or unintentional one, is very clear from Mr. J. Story’s Commentaries on the Constitution (vol. 3, p. 183), one of the most carefully written of his works. There again, after quoting the whole act, he says: “ It has been settled upon solemn argument, that this enactment gives records the same faith and credit as they have in the state court from which they are taken.”
If this, be the true construction of the act, I suppose it disposes of the question; for it will hardly be contended that our court gives the same effect to one of its own judgments, that the court in Connecticut considered that they had given to it.
We have very high authority in our own state for saying that the proceeding in Connecticut was unconstitutional, and would not have been entertained by our own court of chancery. Considering the exclusive devotion of our court to chancery learning and practice, this may perhaps be considered as high authority as that of the court of errors of Connecticut upon such a subject. In Bicknell v. Field (8 Paige, 440), Chancellor Walworth, where an action was brought upon a judgment of a court of Massachusetts, in the Supreme Court of this state, and a bill was filed in the court of chancery to restrain the suit, declared that the provision of the Constitution was as binding upon the court of chancery as upon the Supreme Court. And he added; “ It is at least doubtful, however, whether any court- in this state has any right or power to inquire into the regularity of a judgment recovered in one of the superior courts of a sister state, after a personal service of the process upon the party against whom such judgment was obtained. And it certainly would not be giving full faith and credit to the record of a judgment in a sister state *159 if the party against whom that judgment purported to have been obtained were permitted to allege and show, in the courts of another state, that no such judgment was in fact given, or authorized to be entered by the court; but that the judgment record was made up and filed fraudulently by the clerk of the court without authority.”
Upon the whole I am of opinion that the judgment for the plaintiff ought to be affirmed.