Hoffman J.
It is too late to contend, that in a mortgage of personal property, the possession must, in all cases, be transferred to the mortgagee. It has been settled by repeated decisions of the Supreme Court of this State, and by other tribunals, entitled to the highest consideration, especially the Supreme Court of the U. S., that where there is a mortgage of chattels, the possession may, in manyiustanoes, remain with the mortgagor; especially in those cases where the possession must necessarily so remain, from the nature of the property mortgaged, and from the objects of the parties in making the transfer. If those objects be fair and proper, and for a full consideration, then there is no fraud in the transaction, and without fraud "the mortgage is not" void. Neither is the position to be sustained that the transfer is ipso/ctcio void per se, because the possession has been left with the mortgagor. If this were true, then there could be no such thing as a mortgage of chattels, —for the very idea of a mortgage, ex vi termini, implies that the possession is to remain with the mortgagor. Still it is too strong to say that possession by itself implies nothing, for it is prima facie evidence of ownership. It will throw upon a party who claims against it, or in spite of the possession, the necessity of showing the bomfides, of the transaction, and will compel him to show why the possession was so left, and moreover to prove a proper consideration and an actual transfer.
In this case I can discover no fraud in the transaction as between the mortgagor and mortgagee. The transfer, in form, consists of a bill of sale and a declaration of trust, simultaneously executed, being in its legal effect a mortgage. Upon the face of the papers the object of the parties is apparent; a legal consideration has been shewn, and every imputation of improper intention is removed. As between the mortgagor and mortgagee, therefore, this transfer is valid and cannot be impeached. Indeed, as between, the mortgagee and the general creditors of the mortgagor, it *83 would not be obnoxious to the statute of frauds and would be upheld, unless the creditor could show fraud in fact.
But notwithstanding these general admissions it does not follow, that the mortgagor in possession, is so entirely devoid of title as that he can impart none to an innocent bona fide purchaser, ignorant of the mortgage,—there being no circumstance to put him on" his guard, or excite inquiry. To carry the doctrine of the mortgage of chattels to this extent, would be opening a wide door to frauds, and might enable the reputed owner of covered property to cheat the innocent. The law in such cases will guard the rights of bona fide purchasers, and if there must be loss, will throw it upon the party who ought in justice to bear it. The mortgagee is under no necessity of talcing such a security, and if he does take it, upon him lies the peril of fraud in the mortgagor, because he is the party who has reposed the trust and given the mortgagor the opportunity of injuring an innocent third person. And I wish it to be explicitly understood, that in the case of a sale of chattels by a mortgagor in possession, to an innocent purchaser, who conducts himself honestly in the transaction and has nothing to put him upon his guard,—in such cases, the rights of the innocent purchaser are superior to those of the mortgagee, and will be protected.
The general rule of law as to purchasers and pledgees does not differ widely, although we do not consider the latter entitled to equal favour with the former. The pawnbroker, especially, is not entitled to any particular favour, not because there is any thing objectionable in his occupation, but because he deals in a hazardous business which ought to put him on inquiry and produce caution.
In the principal case, the pawnbroker, the defendant, received the goods pledged from the mortgagor’s son, who was a yotith, even if he bad attained his majority. The articles pledged were plate and linen, marked with the name of the mortgagor : the name of the pledgor was known to the pawnbroker, and it differed from that marked upon the goods. A clerk was sent to the house of Mr. Ogden after dusk in the evening, whose name was written upon the door, on a brass plate. At the house a number of young persons were seen, but the head of the family did not pre *84 sent himself. The sums borrowed were considerable and the articles pledged were valuable. Every thing in the transaction was unCommon, and yet no inquiry was made by the pawnbroker and no questions were asked. He relied implicitly upon his faith in Mr. Ogden’s son, and never inquired as to his authority, his age, his situation or condition. Was there not enough here to put a man of ordinary prudence on his guard 1 Would not a person of common caution have at least asked Morgan L. Ogden whether he acted in his own behalf or in behalf of another; and when by inquiry he had found that the head of the family was absent, would he not have looked further into the matter before he would have parted with his money 1 Nothing of the kind was done, and I consider the defendant’s misfortune as the result of his own imprudence and want of caution.
If the defendant had received the articles from the mortgagor himself, then I should have been inclined to protect his rights to their fullest extent; but he received them from a young man who was not the real owner, as he must have known and did know, and he is not entitled to favor against a person who has in good faith advanced his money upon the same goods. The title to the goods was vested in the plaintiffs by the bill of sale, and it was perfect as against Ogden and his general creditors. The title of the plaintiffs, in short, was paramount to the rights of all persons but an innocent and bona fide purchaser.
There is another question as to the amount of the recovery which remains to be settled, and that relates to the extent of the plaintiffs’ claim. After the goods were sold, it is evident that the proceeds might be applied to any objects to which Ludlow and Ogden gave their consent: and they might also by an agreement anticipate dhe sale and appropriate Ludlow’s advance in the same manner. Now, it is clearly proved by the testimony of Mr. Ogden himsp.lf! that the bonds which were in fact paid, were satisfied in accordance -with his wishes and the assent of Ludlow. The same remark is applicable to the debt of Brainerd and Kimberly, and neither party has any right to complain of that, to which they have expressly ' given their assent. The lien of Stevenson, therefore, was subject to all the equities of Ludlow’s claim, and that must he settled upon *85 the principle of allowing him all his advances made with Ogden’s assent. If Ogden consented that Ludlow should advance to the plaintiffs the amount which was actually paid by him, then that amount was covered by the mortgage. It is clearly proved that Ludlow did not exceed the sum authorized by Ogden himself, and the plaintiffs are entitled to recover, subject to an adjustment to be made upon these principles by a Judge at Chambers.
Judgment for the plaintiffs.
[W. H. Harrison, Att’y for the pl’ffs.]
Note. “If the real owner suffers another to have possession of his property and of those documents which are the indicia of property, semble, a sale by such a person would bind the true owner,” Dyer v. Pearson, 3. B. & C. 2. 4th D. & R. 38. See also Mowry et al. v. Walsh, 8. Cowen’s R. 238.