## VAN BUSKIRK a. WARREN.

*Supreme Court, Third District; Circuit, February*, 1859.
*Again at General Term, May*, 1860.

VALIDITY OF ASSIGNMENT.—FOREIGN ATTACHMENT.—LAW OF PLACE.—CONFLICT OF LAWS.

An assignment, by a debtor, to several creditors, of merchandise, with a provision that it was to be sold by them at the usual prices for which the debtor had sold it, or at such reasonable prices as the debtor or one of the assignees named should approve in writing, and the proceeds to be applied to their demands,— is valid.

The fact that by reason of the assigned property being situated in another State the assignees did not gain immediate possession, does not render the assignment void, even as against attaching creditors who seize it meanwhile.

A debtor residing in the State of New York made an assignment, for benefit of creditors, of personal property situated in the State of Illinois. The assignment

was executed and delivered within this State. After the execution and delivery of the assignment, certain of his creditors who were also residents of this State, had obtained an attachment against the debtor's property, in a court of Illinois, and had levied it upon the same personal property which was included in his assignment; and subsequent to the assignment, they caused the property to be sold on execution under a judgment recovered in that action. *Held*, that the assignees might maintain an action against the attaching creditors, for damages, for selling the property.

The proceedings of a court in another State, in such case, are not an estoppel against the assignees who were strangers to such proceedings.

The right of the assignees should be determined, not by the law of Illinois, but by the law of New York.

Trial by the Court.

These were two actions brought to recover damages for the taking and carrying away of thirty-nine chilled-iron and two sheet-iron safes, alleged to have been the property of the plaintiffs, at Chicago, in the State of Illinois. The causes were tried at the Rensselaer County Circuit, before Mr. Justice Hogeboom, without a jury.

It appeared upon the trial, that on the 3d day of November, 1857, John W. Bates was the owner of forty-one iron safes, which were then in Chicago, in Cook county, in the State of Illinois. Bates, and the several parties to this action, except the plaintiff Woodbury, who resided in Ohio, then were, and still were at the time of this trial, residents and citizens of the State of New York.

The defendants had previously, during that year, sold to Bates iron which was used in the manufacture of safes, for which he was indebted to the defendants in the sum of $1,777.39, on the 5th day of November, 1857. On the 5th day of November, 1857, the defendants, by their attorneys at Chicago, by process of attachment duly issued on that day, in pursuance of the laws of Illinois, in an action in the Court of Common Pleas of Cook county, Illinois, brought by the defendants against Bates upon that debt, duly attached and levied upon said safes in the city of Chicago, as the property of Bates; and such proceedings were afterwards had in that action, and in furtherance of the attachment, that on the 9th day of June, 1858, the defendants recovered judgment against Bates by default for $1,826.77, damages and costs, and afterwards duly sold the safes under and to satisfy an execution issued upon the judgment, and that

such proceedings were regular. On the 3d day of November 1857, Bates executed and delivered at the city of Troy, in the State of New York, to the plaintiffs, the following instrument:

This instrument, made this second day of November, 1857, between John W. Bates, of the village of Lansingburgh, N. Y., of the first part, and Morris I. Van Buskirk and Edward P. Pickett (composing the firm of Van Buskirk & Pickett), of Lansingburgh, Jason C. Osgood, George T. Blair, D. Adams, Edward Ogden, Francis A. Fales, and Isaac N. Haight, each of Troy; J. L. Hatch, of New York, A. H. Wood, of Watertown, N. Y., and B. B. Woodbury, of Ohio, and H. B. Sisson, of Bristol, in Ontario county, N. Y., of the second part: Witnesseth as follows:

Whereas, said Bates, in course of his business of manufacturing iron safes, under the name of the World's Safe Company, has a great number of said safes in various places which yet remain unsold, and there are due or to become due to said Bates divers sums of money from sales of safes manufactured as aforesaid; and whereas, also, said Bates is indebted to the said several parties of the second part hereto as follows: [Here followed a statement of Bates' indebtedness to the several parties of the second part].

Now in consideration of the said several items of indebtedness, and for securing the payment of the same, and protecting the said several parties of the second part against any loss on account thereof, the said Bates does hereby sell, assign, and set over to the said parties of the second part, all and every of the said safes which are now owned by the said Bates, except those within the State of New York, and also all the said sums due or to become due, as aforesaid, from sales of safes, and the accounts therefor and the evidences thereof, except such notes and securities as have come to the hands of said Bates or of Lewis Lillie, and except accounts and negotiable paper for safes sold by the agents within the State of New York for selling said safes; and the said Bates does hereby authorize the said parties of the second part to take possession and control of the said safes hereby sold to them, and to sell the same at the usual prices at which such safes have been sold by said Bates, or at such reasonable prices as either said Bates or said Edward P.

Pickett shall in writing approve. And also to collect the said sums of money and accounts and evidences of debt hereby transferred to the said parties of the second part, and after paying the reasonable costs and expenses of such sales and collections from time to time, to apply the residue of the proceeds derived therefrom in payment of the aforesaid debts of said Bates, pro rata, according to the respective amounts thereof, until, if such residue shall suffice therefor, the said debts shall be fully paid.

And whereas, a pretended sale has been lately made by Lewis Lillie to Lorenzo Stowell, of certain safes belonging to said Bates, and said sale was made without the knowledge or assent of said Bates, and is deemed by said Bates to have been *mala fide*, it is intended hereby that the safes so sold to said Stowell, and all the interest of said Bates therein, shall be deemed a part of the property hereby sold and assigned to the said parties of the second part; and nothing herein is intended to ratify or adopt any sales of safes which (sales) have been made by said Lewis Lillie, or any other agent of said Bates, except actual and *bona-fide* sales thereof.

In presence of, &c.

·[L. S.]          JOHN W. BATES.

The plaintiffs, in the present action, proceeded without delay to take possession under said instrument of the property included therein, but were prevented from taking possession of the attached safes by the attachment having been levied thereon, previously to any demand made by plaintiffs at Chicago, or elsewhere, of such safes. They took possession of the residue of said property, but not before the attachment. At the time the safes were attached, neither the defendants nor their attorneys had any knowledge or information whatever of the foregoing instrument, or of any transfer of the safes to the plaintiffs, or by Bates. Soon after the attachment was levied, and before any further proceedings were had in the action against Bates, the plaintiffs herein were notified of the attachment and levy under it, and the defendants herein were notified of such instrument, and that plaintiffs thereby claimed the safes.

Both before the recovery of the judgment in Illinois and after the sale under execution, the plaintiffs herein demanded of

the defendants herein the attached safes, and the same were refused. It was admitted that the cases of Martyn *a.* Dryden (1 *Gilman's R.*), and Burnell *a.* Robertson (5 *Ib.*), contained an exposition of the law of the State of Illinois; and those cases, with the statutes of Illinois, were read on the trial from the printed volumes, as establishing the fact that the law of Illinois was in accordance therewith. The plaintiffs also introduced evidence as to the market value of the safes in Chicago at the time of the conversion, and of their formal demand for possession.

*W. A. Beach* and *John B. Gale*, for the plaintiffs.

*D. L. Seymour* and *George Van Santvoord*, for the defendants.

HOGEBOOM, J.—The plaintiffs sue, in an action analogous to one of trespass or trover, to recover the value of 41 safes formerly the property of John W. Bates, and levied upon by the defendants at Chicago, in the State of Illinois, on the 5th day of November, 1857, under attachments against Bates, issued in behalf of the defendants and valid by the laws of Illinois. Judgments were subsequently, and on the 9th day of June, 1858, obtained against Bates by default in the attachment-suits, executions issued thereon, and upon them, the safes, which had been previously attached, were sold at Chicago, and the proceeds went to the benefit of the defendants. This constituted the title and justification of the defendants. Upon demand made by the plaintiffs, the defendants refused to return the safes or account for the proceeds.

On the 3d day of November, 1857, Bates then and theretofore being the owner of the safes, and being indebted to the plaintiffs severally in various amounts which are specifically stated; in consideration thereof, and for the purpose of securing the payment of such indebtedness and protecting them against any loss, sold, assigned, and set over to them, by an instrument under his hand and seal, dated the 2d, and acknowledged the 3d day of November, 1857, all and every of said safes, and also, with some exceptions, all sums of money due or to become due, and accounts, securities, and evidences of debt arising from the sales of other safes, and authorized them to take possession and control of said safes (thereby sold to them),

and to sell the same at the usual prices at which such safes had been sold by Bates, or at such reasonable prices as said Bates or Pickett (one of the plaintiffs), should in writing approve, and to collect the moneys, accounts, and evidences of debt transferred, and, after deducting the reasonable costs and expenses of sales and collections, to apply, from time to time, the residue of the proceeds derived therefrom in payment of said debts, pro rata, until, if such residue should suffice therefor, the said debts should be fully paid.

At the time of this last-mentioned sale or assignment, said safes were in Chicago, in the State of Illinois, in a store occupied by a salesman or agent of Bates. The plaintiffs never had actual possession of the safes, but were proceeding without delay to take possession thereof under said instrument, but were prevented from taking possession by said attachments having been levied thereon previously to any demand made by plaintiffs, at Chicago or elsewhere, of said safes. At the time said attachments were levied, the defendants were without any knowledge, information, or notice of the assignment in question, and the plaintiffs were equally ignorant of the attachments and attachment proceedings. Soon afterwards, and before any further proceedings in the attachment-suits, the parties were mutually notified of each other's claims and proceedings, and of their respective sources of title.

Bates, and all of the other parties, plaintiff and defendant, before, during, and since November, 1857, were, and still are, residents and citizens of the State of New York, except the plaintiff Woodbury, who resided in Ohio. The defendants and most of the plaintiffs resided and did business in the city of Troy. Bates manufactured there the safes in question, and the defendants sold to him there the iron of which the safes were made, and which iron entered into and formed the consideration of the judgments in the attachment-suits, which were subsequently perfected in Illinois.

The question arising upon this state of facts is, which has the better title to these safes, the plaintiffs or the defendants; and if there be a conflict between the law of New York and that of Illinois, on this question, which is to prevail? The defendants allege that the transaction between Bates and the plaintiffs was not an actual sale of the safes, but an assignment, fraudulent

and void upon its face as against other creditors of Bates, imperfect and never consummated either as a sale or assignment, for want of actual or constructive delivery of the property sold or assigned, and at all events subordinate to the claims of the defendants by the laws of Illinois, and therefore that they cannot be made liable as trespassers or wrongdoers for the taking and conversion, in Illinois, of property to which, by the laws of that State, they had a right superior to that of the plaintiffs.

The plaintiffs, on the other hand, contend that they are prior in point of time, and therefore superior in point of right; that by the laws of New York the sale or assignment to them would take preference of the subsequent attachment of the defendants; that personal property has no locality, but follows the domicil of the owner; that the transaction must therefore be governed by the laws of New York, and the more especially, as not only all the parties (except one of the plaintiffs), including Bates, resided and did business here, but that the assignment was made here; and this also is the forum selected for enforcing the rights of the parties, no other having been previously selected or occupied for settling the controverted rights of the parties litigating in these actions.

If the transaction is to be determined by the laws of Illinois, the defendants must prevail. It is there held, that in a case similar to this the defendants are to be regarded in the light of *bona-fide* purchasers for a valuable consideration without notice of the plaintiffs' rights, and having first acquired legal possession, are by that circumstance entitled to a preference over the plaintiffs. A case very similar to the present is reported in 5 *Gilman's (Illinois) R.,* 282 (Burnett *a.* Robertson). The action was replevin, to recover certain stage-horses and harness by the plaintiffs, as the assignees and vendees of O. Hilton & Co., against the defendant, who justified under attachments against the same parties.

" O. Hilton & Co. were mail contractors, and the former owners of the property, and on the 10th day of February, 1847, at St. Louis, had conveyed them with other property upon different stage-routes in Illinois, Iowa, and Wisconsin, to the plaintiffs who were their creditors, and who immediately after the execution of the bill of sale proceeded as fast as possible to take possession of the property conveyed, but before they had

taken possession of the property in question, which was upon the stage-route between Peoria and Ottawa, in Illinois, it was seized in the county of Marshall by the defendant, on the 14th day of February, 1847, as an officer under various writs of attachment sued out in the county of Marshall, against O. Hilton & Co."

The question turned mainly on the point of delivery. The court held that there was no actual delivery as against the defendant, and that the attaching creditor was to be regarded in the same light as a purchaser, who in the case of two sales of personal property, both equally valid, had first obtained possession, and thereby acquired the better right; that the plaintiffs not having obtained actual possession, nor exercised any acts of ownership over the property before the levy of the attachment, nor having given notice to the party in actual possession, of their title, and obtained his consent to hold them for their benefit, had not perfected their possession, and must fail; that it would operate injuriously upon trade, and be unjust to purchasers, if purchasing in good faith from a party in actual and rightful possession, and having authority to sell, they could not be protected against a purchase prior in point of date, but unaccompanied with delivery of possession ; and that in the case of two innocent parties, he ought to suffer who purchases property knowing it to be at a distance and incapable of being reduced to immediate possession.

But the law of Illinois is not the law which must govern the case. The domicil of the parties, and the act of assignment, and the forum of controversy being in the State of New York, the law of the latter State must govern. It is always to be regretted that a different rule should prevail in different States or countries, but when this does in fact occur, there are controlling circumstances which regulate the action of judicial tribunals. The first is, that as a general proposition personalty follows the person, and that voluntary sales or assignments of personal property, made by the owner at the place of his residence, are construed by the law of the State of the owner's domicil. (*Story's Conflict of Laws*, §§ 379, 380, 383, 384, 242, 406 ; 2 *Kent's Com.*, 429, lect. 37 ; Holmes *a.* Remsen, 20 *Johns.*, 229 ; Johnson *a.* Hunt, 23 *Wend.*, 87 ; Hoyt *a.* Thompson, 1 *Seld.*, 320 ; Abraham *a.* Plestoro, 3 *Wend.*, 538.)

There are some exceptions to this rule, where the statute law and perhaps the judicial decisions of a particular State, owing to peculiar circumstances, make special provisions in regard to personal property actually within its territory, in favor of its own citizens. (*Story's Conflict of Laws*, §§ 244, 383, 325, 549, 550, 414, 416.) But the present is not such a case; on the contrary, not only the subject of controversy was owned in the State of New York, and there conveyed or assigned, but the debts of all the parties originated there, the residence of all the parties is there, and the controversy is conducted there. A different question might arise if this litigation had first commenced between the parties to this suit in the State of Illinois. It is quite possible that a judgment perfected in such a suit between the same parties conducted in Illinois, whether resulting in the favor of the one party or the other, might be regarded as conclusive upon them in this State, upon the ground that full faith and credit must be given by each State to the judicial proceedings of its sister States. (*U. S. Constitution*, art. 3, § 4; *Story's Conflict of Laws*, § 609; Shumway *a.* Stillman, 6 *Wend.*, 447; Dobson *a.* Pearce, 1 *Duer*, 142; Baker *a.* Reade, 13 *Barb.*, 152.) But that question does not arise.

We must then look at the question as it stands in the State of New York. I feel no great difficulty in determining the objections raised to the instrument of sale or assignment upon its face in favor of the plaintiffs. I think it conveys absolutely and immediately to the plaintiffs the legal title to the property. It purports so to do, and such was, I think, the intention of the parties. If it had been lost or destroyed after the execution and delivery of the instrument, the loss would, I think, have fallen upon the plaintiffs. Certain acts, it is true, were to be done by the plaintiffs under the instrument, but not so much, I think, to perfect the title as to regulate the price. The sale or assignment was not in trust for other creditors, but directly to the plaintiffs for their own benefit, and in satisfaction *pro tanto* or altogether of their claims. (Leitch *a.* Hollister, 4 *Comst.*, 211.) They were to take possession, but this is consistent as well with an actual transfer of title, as with the idea that it was a mode of perfecting title. They were to sell the safes at the usual prices. But, as before stated, this was a mode of regulating the price. If they omitted to do it, it did not vitiate

the transfer, but would charge the plaintiffs with their value at the usual price. But the plaintiffs not wishing to be charged absolutely with such price, as they might be unable to obtain it, it was further provided that they might be sold at such reasonable prices as Bates or Pickett might in writing approve. This was but a mode of regulating the value. It conferred no such power on the assignor over the property as evinced a fraudulent purpose to reserve some interest therein for his own benefit, or was calculated to defraud other creditors. No other creditors had any interest in this property, unless the whole scheme was a fraudulent contrivance to dispose of the property for the assignor's own benefit, or for less than its value. And neither of these is fairly inferable. Bates had no absolute veto upon the sales, but only in a particular contingency,—a very limited power over them, to prevent a sacrifice of the property. The plaintiff had the absolute right to sell at the usual prices, or at such reasonable prices as one of their number (Pickett) should in writing approve, or as Bates himself should approve. And I think they had the absolute right not to sell at all, or to sell at such prices as they pleased, subject to the contingency, that in case they did not conform to the injunctions of the instrument in the mode of disposing of the property, they should be chargeable with the property at the usual prices. The whole seems to have been an arrangement, and not an unfair or an injudicious one, to prevent, on the one hand, a sacrifice of the property by the plaintiffs, and on the other to prevent them from being subjected to the payment of an exorbitant price therefor, the true value not being at the moment capable of absolute ascertainment.

If in the event there turned out to be a surplus over and above the payment of the plaintiff's debt, I do not see but that the plaintiffs would hold the same as trustees for Bates or his creditors; but I discover no difficulty in the latter reaching the same, nor any attempt to tie it up or protect it against their just demands. (Leitch a. Hollister, 4 Comst., 211.)

The difficulty which has presented itself to my mind, if any in fact there be, is, as to the delivery of possession of the assigned property. Was such delivery indispensable to consummate the change of title; or, was it sufficient that the delivery should be accomplished within a reasonable time thereafter,

provided the parties were acting in good faith? Immediate delivery, it is true, is the usual accompaniment and manifestation of an executed sale of personal property, and if it does not take place, is a circumstance from which to infer fraud.

But it is not an indispensable element in any sale, and after all can only be regarded as a matter of more or less suspicion, according to the nature of the case. Our statute only raises a presumption of fraud in such a case, even where the goods and chattels are at the time of the sale in the possession or under the control of the vendor, and so, capable of immediate delivery; which presumption becomes fixed and conclusive evidence of fraud, to be sure, as against creditors and purchasers in good faith, unless rebutted by evidence that the sale or assignment was made in good faith and without any intent to defraud such creditors or purchasers. (2 *Rev. Stat.*, 136.)

If, then, there are circumstances, as in this case, showing a reason why immediate delivery could not be effected—to wit, that the goods were at the moment many hundred miles distant (Nash a. Ely, 19 *Wend.*, 523); if the parties were proceeding, as is conceded in the case, with due diligence to consummate the transfer of possession; if there was in fact good faith—and the existence of the debts and the actual and *bona-fide* character of the consideration tend to show the fact; if there was no intent to defraud creditors or purchasers—and the uncontradicted evidence tends to repel such intent; then the present appears to be a case in which, according to my understanding of the law, the plaintiffs must recover.

The defendants must, I think, stand or fall by the circumstance of non-delivery of possession for two days; and as already stated, that, at most, is a circumstance of suspicion, and not controlling evidence of fraud, and the suspicious circumstances, if any exist, are, I think, sufficiently explained.

The contrary position is ably maintained in the case from 5 *Gilman's Reports* already quoted, but I am not sure that the learned court who pronounced that opinion did not go too far, in the first place, in putting the attaching creditors upon the same footing as a *bona-fide* purchaser for value without notice; and in the second place, in saying that a purchaser of the latter character would be, under the circumstances, protected. I am not sure, also, that they were not considerably influenced by the

circumstance that in that State the omission to deliver makes the sale absolutely void; for such I understand to be the law of that State (1 *Stat. of Illinois*, ed. of 1858, 562 ; Thornton a. Davenport, 1 *Scammon's Illinois R.*, 293 ; Kitchill a. Boutton, *Ib.*, 303 ; Rhines a. Philps, 3 *Gilman's Illinois R.*, 455) as it certainly is not of this. Be that as it may, it is, I think, sufficient to say, that the case must be decided by the law of New York, and that, I think, turns the scale in favor of the plaintiffs.

On the subject of damages, the plaintiffs, if they are entitled to recover, are entitled to the fair market value of the safes, with interest from the time of the conversion. This does not mean necessarily the wholesale price of the safes, sold together in one body to a single purchaser, but such price as, at the place where they actually were, they would have brought either singly or in parcels, as good judgment would dictate, when offered for sale to such purchasers as would be likely to present themselves, or as would be convened at a public sale upon proper notice.

Tested by these rules, I am of opinion that the fair price of the safes was, on the 5th of November, 1857, 95 per cent. of what is called, in the evidence, the list-prices, with freight added, and interest thereon from the last-mentioned date. I think such is the price with which the plaintiffs themselves would have been chargeable as between them and Bates, if their transactions had closed on the 5th of November, 1857. And there is no reason why the defendants, if they appropriated the property without right or authority, as they must be held to have done, should be entitled to a more lenient rule of damages.

There must, therefore, be judgment for the plaintiffs in each case, for their proper proportion of the above amount, to be graduated according to the stipulation of the parties, as against the defendants in each case, by the amount of their respective judgments against Bates, with costs of the actions respectively.

---

*May*, 1860.—Appeal from the judgment entered upon the decision of Mr. Justice Hogeboom.

*David L. Seymour*, for the appellants.—I. The written in-

strument, executed at Troy, by Bates to the plaintiffs, on the 3d day of November, 1857, shows the transaction between the parties to have been a mere voluntary assignment of the property towards payment of antecedent debts, and not a *bona-fide* sale for value, in the usual course of business. The instrument itself contains all the usual provisions of an assignment in trust to pay debts.

The giving power to take possession and to sell, and the directions as to the application of the proceeds, the charging of the expenses of the sale upon the fund, before applying the residue of the proceeds towards payment of the debts of Bates, show the intention of the parties to have been the making an assignment in trust to pay certain debts. (*Burrill on Assignments*, 30, 31 ; *Story on Sales*, 1.)

II. This assignment is fraudulent and void upon its face; because it assumes to fix or to retain in the assignor the power to control the prices for which the safes may be sold. The authority is " to sell at the usual prices at which such safes have been sold by Bates, or at such reasonable prices as either Bates or Pickett shall in writing approve." A specific power to sell must be exercised in the mode prescribed for it. (Pendleton *a.* Fay, 2 *Paige*, 202.) The creditors of Bates had a right to require them to be sold for their full market value on and after Nov. 3d, 1857—*i. e.*, the best price they will bring immediately after the assignment. (Hoit *a.* Crane, 7 *Paige*, 37.) The reservation to Pickett, one of the trustees, of a power of fixing the price, is equally objectionable. It is assuming to restrict to one trustee the power which the law gives to all, and which must necessarily be exercised by all. These trustees are joint, and are for a private purpose—*i. e.*, the payment of certain debts of the assignor due to them severally. They must, therefore, all act in executing the trust, if they were merely trustees for others. (Sinclair *a.* Jackson, 8 *Cow.*, 543 ; Ridgely *a.* Johnson, 11 *Barb.*, 527; *Willis on Trustees*, 136.) In any light, this cause of the assignment is an attempt to prescribe conditions for the management or disposition of the assigned property, which is contrary to law. (Dunham *a.* Waterman, 17 *N. Y.* (3 *Smith*), 9 ; Hutchinson *a.* Lord, 1 *Wisc.*, 286; Keep *a.* Sanderson, 2 *Ib.*, 42.)

III. This assignment is void, as made to " hinder, delay, or defraud creditors." (2 *Rev. Stat.*, 4 ed., 319, § 1.) It gives a

preference to some of the insolvent debtors' creditors over others. Preferential assignments are inconsistent with an enlarged equity, and should, therefore, be held to the strictest conditions. (Nichols *a.* McEwen, 17 *N. Y.*, 24.) The "intent" spoken of by the statute may be proved from the instrument itself. A party must in all cases be held to have intended that which is the necessary consequence of his acts. (Dunham *a.* Waterman, 17 *N. Y.*, 21.)

IV. Even if not void on its face, the title to the safes did not pass before the levy of the attachment. 1. To make the assignment valid against the claims of attaching creditors, the acceptance of the trust, or the assent of these creditors to it should be shown before the attachment levied. 2. The defendants, who were attaching creditors in good faith, are, as against the plaintiffs, entitled to the same advantage that a *bona-fide* purchaser could have claimed at the time the safes were attached. (Leitch *a.* Hollister, 4 *Comst.*, 211; 1 *Story Eq. Juris.*, § 384; Lewis *a.* Stevenson, 2 *Hall*, 63; Prescott *a.* Heard, 4 *Mass.*, 63; and 8 *Wend.*, 620.) The common law of the State of Illinois, in which the defendants were pursuing their legal remedies for the collection of their debts, was proved on the trial, and the courts of that State held that "the attaching creditor stands in the light of a purchaser, and is to be protected as such." (Martyn *a.* Dryden, 1 *Gilman*, 187; Bushnell *a.* Robertson, 5 *Ib.*, 282.) 3. The delivery of the safes was necessary to perfect the transfer of title in the assignees, as against the defendants—who stand in the situation of *bona-fide* purchasers. In all cases of sales or assignments of personal property, it is essential that there be a delivery, either actual or constructive, or else title to the property does not pass to the vendor or assignee; and where the bill of sale or assignment contemplates an actual delivery at the place where the property is at the time of sale, no title passes until such delivery. 4. Again, as the contract of sale does not specify any place for the delivery of the safes, the general rule of law will apply and fix the place of delivery at Chicago, where they were at the time of the assignment. (2 *Kent's Com.*, 3 ed., 504.) When personal property is sold, which, at the time of the sale, is in the hands of a third person, it will be subject to the attachment of the creditors of the vendor, unless the person having the possession bo

notified of the sale, and agree to hold the property for the vendor. (Whitney *a.* Lynde, 16 *Vt.*, 579 ; Marshall *a.* Towne, 2 *Williams' Vt.*, 14 ; Cobb *a.* Haskell, 14 *Maine*, 303 ; Lanfear *a.* Summer, 17 *Mass.*, 110.)

V. The defendants are *bona-fide* creditors, and by attaching the property in the manner they are proved to have done in Illinois, acquired rights thereto of which they cannot be devested, nor can they be made liable for the exercise thereof by the plaintiffs. These rights allowed them to attach the 41 safes, and, after obtaining judgment against Bates under the attachment, to sell the safes by execution issued upon the judgment and in payment of the debt, notwithstanding the claims of the plaintiffs to be purchasers prior to the attachment, they not having reduced the property to possession before the attachment. The acts of which the plaintiff complains are shown to have been done in and by the regular legal enforcement of remedies for the collection of the defendants' debts, upon personal property situated in the State of Illinois. The laws of Illinois expressly give to the attaching creditor, whether resident or non-resident, a right to collect his debt out of the property of the debtor in that State, and the courts of that State, in construing and applying these statutes, have declared that right to be superior to the right acquired by a prior purchaser who had not taken possession of the property before the levy of the attachment. In such case, although the owner of the goods reside in New York, yet his goods in Illinois are subject to the laws of Illinois. They were protected by those laws, and are justly subject to such disposition, and liable to such seizure as the laws of that State provide for the security of the rights of its citizens, and the regulations and facilities of trade generally, within that State. (*Story's Conflict of Laws*, § 550.) Whenever the *lex sitæ* allows the property of non-residents to be seized by a creditor, under an attachment, to enforce the payment of his debt, for all the purposes of the suit, the existence of the property so seized or attached within the territory constitutes a just ground of proceeding to enforce the rights of the plaintiff to the extent of subjecting such property to execution upon such decree or judgment. (*Story's Conflict of Laws*, § 549.) The title acquired under a sale by virtue of such judgment is held valid in every other State ; and the same rule is

applied to debts due to non-residents, which are subject to like process under the local laws of a State. (*Story's Conflict of Laws,* § 550.) The statutes of Illinois applicable to the subject are—the statute regulating attachments, and the statutes of frauds. The courts of Illinois have repeatedly held, and such is the present law, that the lien of an attaching creditor, without notice, is superior to the rights of a grantee of real property who has not put his deed upon record until after the levy of the attachment; and, that the lien of the attaching creditor, without notice, is superior to the rights of a vendee of the attached personal property who has not reduced it to possession before the levy of the attachment. The principle involved in these decisions of the courts of Illinois is in accordance with the general principles of international law, and the decisions of the courts in many States of the Union. (*Story's Conflict of Laws,* § 416, and cases cited in n. 1; Olivier *a.* Townes, 14 *Martin's R.*, 93, 102; Lanfear *a.* Sumner, 17 *Mass.*, 110. See, also, *Story's Conf.*, § 391.) The doctrine of the courts of Illinois on this subject is consistent with the principles of justice, and that comity which the courts of one State of the Union should always manifest towards the rights of citizens of other States, and the laws, both statutory and common, of such States. The plaintiffs in these causes, as is shown by the admitted facts, had full notice in season to come in, under the laws of Illinois, and test their title by interpleading under the attachment law of that State. The defendants, therefore, who are admitted to have proceeded regularly in the collection of their debts out of the property in question, according to the laws, both statutory and common, of Illinois, are protected by those laws and the general principles of international and State law, against any action therefor.

VI. But this action is not, like most of the actions on these subjects, brought to test the title obtained in another State with a title assumed to have been given in this State, nor is it an action of replevin to recover of the person holding in another State the property seized by the attachment. But it is an action for an alleged wrong or tort committed by the defendants upon the plaintiffs' rights in a foreign jurisdiction. If the act done by the defendants in Illinois was a right and legal act there, and justifiable under the laws of that State, it cannot be

regarded as an illegal act or wrong here, but is clearly justifiable in this State as in the State where it was done ; and in such case no action can. be maintained here by reason of it. (Bissell *a.* Briggs, 9 *Mass.*, 468.)

*John B. Gale* for the respondents.

By THE COURT.*—HOGEBOOM, J.—These actions are brought to recover the value of certain iron safes, alleged to belong to the plaintiffs, and to have been wrongfully taken and carried away by the defendants.

The defendants justify the taking of the safes as being the property of John W. Bates. They were seized under attachments against Bates at Chicago, in the State of Illinois, on the 5th day of November, 1857, issued in behalf of the defendants. Judgments were obtained in the attachment-suits on the 9th of June, 1858, by default, and upon them the safes attached on the 5th of November, 1857, were sold at Chicago upon executions issued on the judgments.

Bates, on the 3d of November, 1857, sold or assigned the safes to the plaintiffs by assignment in writing, made and delivered on that day at the city of Troy, in the county of Rensselaer and State of New York. The plaintiffs were creditors of Bates, and the assignment to them was in good faith. They never acquired actual possession of the safes, but were proceeding in good faith and with proper diligence to do so, but were anticipated and prevented by the attachments of the defendants. Bates, the assignor, and all the assignees (the plaintiffs), except one who resided in Ohio, were residents of the State of New York. So also were the defendants, who were the attaching creditors in Illinois. The property attached and the attachment proceedings and subsequent judgments and execution sales were in Illinois. The sale or assignment of Bates to the plaintiffs, and all the proceedings in this action, took place in the State of New York. This action was commenced on or about the 30th day of June, 1858, after the sales took place, under execution, in the State of Illinois.

Under these circumstances the question in this action arose,

* Present, WRIGHT, P. J., GOULD and HOGEBOOM, JJ.

Which party was entitled to prevail—in other words, which party was to be regarded in this State and in this action as having the better title to the iron safes? The cause was tried at the Rensselaer circuit in February, 1859, and judgment rendered for the plaintiffs. The defendants appealed to the general term.

My brother Gould is of opinion that the judgment of the circuit court was erroneous and should be reversed, for the reason that the defendants are protected by the judgment which they have obtained in the attachment-suit against Bates in Illinois; that inasmuch as the attachment-suits in Illinois were not defended, nor any stay in the proceedings obtained therein, nor this suit brought to bar the attaching creditors' title in Illinois, but the attaching creditors allowed to proceed to judgment and execution in Illinois before this suit was instituted, the plaintiffs' remedy, if any they had, was lost—the defendants have been allowed to perfect title to the property in Illinois; full effect must be given to the judgment of that State, and damages cannot be awarded in the courts of this State against the defendants, for asserting in Illinois their rights under a judgment of the courts of that State valid when rendered, and valid by relation and of force from the time of the attachment levied—that if the plaintiffs had desired to contest the rights of the attaching creditors to the property in dispute, they should have come in and defended in the attachment-suit, or should have seasonably demanded the property, and if not delivered, brought suit for it prior to the entry of judgment in the attachment-suit, and that the plaintiffs, by failing to act on the notice which they had of the attachment in Illinois, and by allowing the attachment-suit there to proceed to judgment without interposing there any claim of title, have put themselves in a position where they cannot contest the question, that by force of the Illinois judgment the property has been sold as the property of Bates, and at the time of the first demand in New York of the property in question by the plaintiffs of the defendants, the property was in the custody of the law in the State of Illinois, and the proper person of whom to make the demand was the sheriff of Cook county, in the State of Illinois, who must be sued in Illinois, and who is not sued here, and that for this reason the defendants must prevail.

In these views I cannot concur: I cannot perceive any such

conclusiveness in the Illinois judgment as against these plaintiffs, as is claimed for it.

The proceedings are between different parties. The plaintiffs in this case are in no proper sense either parties or privies to those proceedings, and therefore not bound by them. The attachment suit and proceedings must have been between the present defendants as plaintiffs and John W. Bates, or some one holding under him as defendant. The present plaintiffs were strangers to them. Nor do I see that the fact that they became cognizant of those proceedings after the levy of the attachment, and before the judgment, can in any manner affect them. They had no right, at least they would have no right in this State, to intervene in those proceedings. My learned brother supposes that in Illinois the assignees would have a right to come in and defend the attachment-suit. I do not know how this is, but it would be necessary to go at least one step further, before those proceedings could assume the character of an estoppel—to wit, that the assignees should be bound to come in, or be barred. In such event, it is possible that the judgment would be conclusive upon the present plaintiffs, as being one to which they were in effect either parties or privies. But I know of no such law or adjudication in Illinois, and it has not been contended for by counsel in this case.

The Massachusetts cases of Whipple *a.* Thayer (16 *Pick.*, 25), Daniels *a.* Willard (*Ib.*, 36), and Bullock *a.* Taylor (*Ib.*, 335), all hold that an assignment made by an insolvent in another State, valid by the laws of that State, is valid in Massachusetts so far as to protect personal property situated in Massachusetts at the time of making it, against an attachment in Massachusetts made by a citizen of the State where the assignment was made. It is true the question was tested by a suit brought in Massachusetts by the assignees, against the attaching creditor or the officer levying the attachment previous to judgment in the attachment-suit. But I cannot see how the position or rights of the assignees would have been prejudiced by waiting until after a sale upon execution under the judgment in the attachment-suit. Taking judgment, issuing execution, and making sale thereupon, would only have been additional illegal steps to the primary one of issuing and levying the attachment upon property not subject to it.

The Massachusetts decisions do not, therefore, as has been supposed, favor the views contended for on behalf of the defendants; on the contrary, if they prevailed in Illinois, they would be decisive to show that if the present plaintiffs had brought this action there, they, as citizens of New York, showing title to property in Illinois valid by the law of New York, where the assignment was made, as against the defendants, citizens also of New York, would have been successful against the defendants in Illinois.

The Illinois proceedings are not therefore an estoppel, and we are driven back to the two questions:

First, whether, in a case like the present, the law of Illinois, or the law of New York is to govern; and if the latter, then, whether the plaintiffs' title is superior to that of the defendants', by the law of New York. I have debated these questions at sufficient length in the opinion delivered at the circuit, and I have seen no reason, since the more extended and elaborated argument here, materially to change the views then expressed.

Perhaps some of the grounds upon which the propriety of determining the right to the property in question by the law of New York in preference to that of Illinois rested, were not made sufficiently prominent in the opinion delivered at the circuit. They may be briefly enumerated as follows:

1. The contracting parties to the contract or purchase under which the plaintiffs claim title, were citizens of the State of New York.

2. The instrument under which the plaintiffs' claim was executed and delivered in the State of New York, and the consideration upon which it was based, arose in that State.

3. The instrument under which the plaintiffs make title was a voluntary sale or assignment, and not a compulsory one. By a voluntary one is here intended, not one without consideration, but one without compulsion, voluntary, as done by the party's own choice, and not *in invitum*.

4. The defendants are also citizens of the State of New York.

5. The debts for the collection of which the defendants' attachment proceedings were instituted in Illinois, were contracted and arose in the State of New York.

6. The attachment debtor also resides in the State of New York.

7. The forum of controversy is also in the State of New York.

The only facts upon which the defendants rely are that the property in controversy was situated in the State of Illinois, and was seized there under attachment proceedings regularly issued in Illinois.

These being the facts and circumstances of the case, I understand the law of the State of New York takes preference. (Hoyt *a.* Thompson, 1 *Seld.*, 352 ; *Story's Conflict of Laws*, §§ 379, 380, 383, 384, 411 ; Holmes *a.* Remsen, 20 *Johns.*, 258; Abraham *a.* Plestoro, 3 *Wend.*, 566 ; Johnson *a.* Hunt, 23 *Ib.*, 96 ; Martin *a.* Hill, 12 *Barb.*, 631; Tyler *a.* Strong, 21 *Ib.*, 198.)

In the case of Martin *a.* Hill (12 *Barb.*, 631), the plaintiff was the mortgagee, under a certain chattel-mortgage of certain oxen owned by one Millard, who was indebted to him, and which oxen were left in the possession of the mortgagor, under circumstances rebutting the idea of fraud or bad faith. By the law of Vermont, such a mortgage unaccompanied by possession was void.

The mortgagor and mortgagee resided in Washington county, New York. The mortgagor having taken the oxen into the adjoining town of Fairhaven, in Vermont, they were seized upon there by the defendant, who was a constable of that town, by virtue of an execution upon a judgment obtained in Vermont against the mortgagor, by certain citizens of that State. This action was brought to recover their value, and it was held that the nature, construction, obligation, and effect of the mortgage must be determined by the laws of this State, and that the *lex loci contractus* controls as to the validity and construction of personal contracts, and that the plaintiff was entitled to judgment.

This was, however, but a special-term decision.

In the case of Tyler *a.* Strong (21 *Barb.*, 198), it was held at general term, in the 7th district, that where both the assignor and assignee of a contract are citizens of this State, and the assignment is executed in this State, and the subject of the contract is personal property, upon the general principle that the *lex loci contractus* controls the nature, construction, and validity of the contract, the validity and effect of the assignment, and the delivery and change of possession of the property

necessary to sustain it, depend upon our laws, although the property itself is situated in another State.

I cite these as comparatively recent cases in our own court, in support of the general doctrine maintained, I think, by the general current of authority in favor of the applicability of the law of New York to the adjustment of the legal rights of the parties to this controversy.

I think the judgment of the circuit court was correct, and should be affirmed.

WRIGHT, P. J.—I concur in the opinion that the questions, whether there was a valid sale or transfer of the safes to the plaintiffs, and whether title had passed to the latter before the defendants' attachments issued, are to be determined by the law of New York, and not of Illinois. The parties are residents and citizens of this State. Bates, the assignor, resided here. The instrument by virtue of which the plaintiffs claim, and which the defendants, as Bates' creditors, seek to invalidate, was executed here. So, also, the debts which constituted the consideration for the transfer, as well as those upon which the attachments issued, were contracted in New York. The legal controversy is pending in the courts of this State. Indeed, the property in controversy was manufactured here, though happening to be in the hands of Bates' agent in Illinois, at the precise period of the attempted transfer. Under these circumstances, if it should be conceded that the law of Illinois differs from ours, the validity of the transfer is to be tested and determined by the law of this State. The law of the owner's domicil determines the validity of every transfer. Alienation or disposition made of personal property by the owner, and the nature and construction of personal contracts, is to be controlled by the *lex loci contractus*. This is the general rule *ex comitati;* but a particular State may, by its statute or customary law, make special provisions in respect to personal property actually within its territory, in favor of its own citizens, as it has entire dominion over it while therein in points of sovereignty or jurisdiction.

A voluntary transfer of personal property which is valid by the law of the owner's domicil, is valid everywhere, except the law of the particular sovereignty in which it is situated has

abrogated, or is in contravention in special cases of, the general rule of the public law. It is not to be assumed, in the absence of evidence that the *lex domicillii* does not govern in Illinois, in the case of a voluntary transfer and disposition of personal property by the owner, as well as in this State. Nor that if this case were pending in that State, the nature, validity, and construction of Bates' assignment would not be determined by the law of New York.

The remedy to be pursued *in invitum* as against personal property is controlled by the State in which such property actually is; but because a citizen of a foreign State may elect to pursue such remedy against the property of another foreign citizen, temporarily within the jurisdiction of a particular State, it does not follow that a controversy respecting the title of such property is to be determined by the law of the latter State. Were the controversy pending in the latter State, this would be assuming that the *lex domicillii* did not govern them. This litigation, however, which involves simply the question whether property in the safes had passed to the plaintiffs before they were attached for the debt of Bates, is pending here, and I think is to be determined by our law.

Now, by the law of this State, was there a valid sale and transfer of the property to the plaintiffs, prior to the issuing of the attachments? for if there was, the defendants were not justified in attaching it for the debt of Bates. On the argument, I supposed this to be the principal and the gravest question in the case. Upon a careful examination, however, I have become satisfied that the transfer was valid, and that Bates by the instrument executed on the 2d of November, 1857, effectually devested himself of all title to the property itself. He manifestly intended to transfer the property directly to the plaintiffs, his creditors, by way of security. No trust was designed; the legal effect of the provisions of the assignment was not to create any; and the legal title passed immediately and absolutely to the plaintiffs. Bates never could have invalidated the sale and reclaimed the property on the ground of fraud, or that delivery of possession of the subject-matter of the assignment, which was at a distance, did not accompany a delivery of the instrument itself. But the court below found that there was no fraud in fact; there is none in law arising

from the provisions of the instrument, and no proper parties to raise the question if there had been any, and immediate delivery was not indispensable to consummate a change of title. There may be a valid sale of personal property, and the title will pass to the vendee, though unaccompanied by immediate delivery. Our statute makes an assignment of chattels, unaccompanied by immediate delivery, presumptively fraudulent as against the creditors,—that is, the judgment-creditors of the person making such assignment, or subsequent purchasers in good faith; but even as respects these classes of persons (and they are the only ones that can raise the question of fraud), it is not required that delivery should accompany the written instrument of transfer, to pass the title to the thing transferred. The fact that the assigned property was not delivered simultaneously with the instrument, does not prevent a change of ownership, but only casts suspicion upon the fairness and good faith of the transaction, and as against the creditors of the assignor, or subsequent purchasers without notice of the assignment, throwing the *onus* upon the assignee to show that the assignment was made in good faith, and without any fraudulent intent. If the assignment in this case was valid, and passed the title to the safes as against Bates, it was equally so against the defendants, who were only creditors at large, and not in a position to attack such assignment as fraudulent. They had not proceeded to judgment and execution, and thereby placed themselves in a position that the assignment interfered with the assertion of their right to the property in question; and until this was done, they were equally bound by Bates' acts as Bates was himself. The act of attaching as creditors at large, the assigned property, did not put them upon the footing of *bona-fide* purchasers for value without notice, so as to enable them to call in question the validity of the act of Bates in disposing of such property. Were this, however, otherwise, there is no provision of the assignment having the effect to hinder, delay, or defraud Bates' creditors. It is true that the effect is to give a preference to certain of his creditors, which he had the right to do, but if the transaction is to be regarded as clothing the plaintiffs with a trust, there is no provision of the instrument operating as a restraint upon the discretion of the trustees, or any conditions imposed which would hinder or delay Bates'

Van Buskirk *a*. Warren.

creditors, in reaching any surplus that might remain after the satisfaction of the plaintiffs' demands. With regard to the provisions as to the mode of selling, and the price to be obtained for the assigned property, I entirely concur in the view taken, and the construction placed on them, by the learned judge at the circuit.

If the title to the property had been changed, it could not be legally attached for a debt due from Bates. It was no more lawful in Illinois to attach property for the debt of B., than it would have been in New York. It is supposed, however, that because the plaintiffs had notice of the attachment-suits, and permitted them to go to judgment undefended, that they are in some way concluded or estopped by such judgment from contesting, in the courts of this State, the title to the property. This cannot be so. The plaintiffs were not bound to interpose their claim of title in the suits in Illinois, or be barred. They were not parties, or, in any legal sense, privies to that litigation. Because the defendants had chosen to attach their property for the debt of another, and they were casually notified of the illegal act, and suffered the proceeding to go undefended, they are not consequently concluded by the judgment subsequently obtained.

The defendants were wrongdoers in issuing and levying the attachments, and the subsequent acts of taking judgment and selling the property, were but further illegal steps. In pursuing their remedy against the property, they could only acquire and sell, by force of their judgment, the title and interest of Bates, if he had any. If they wrongfully attached the property of strangers, though those strangers may have been casually informed of the proceeding, and did not come in and defend, or demand a delivery of the property, and bring suit, I am unable to perceive how a judgment against Bates, or *in rem*, as against the property of Bates, can estop the real owners of the property from asserting their title, in an action against the wrongdoers.

I think that the action was well tried at the circuit, and that the judgment is right. I vote for an affirmance of the judgment.

GOULD, J. (dissenting).—I find the opinion of a majority of

the court, conveying, as it seems to me, an erroneous impression of the law of the State of Illinois; and as I deem that law to have a controlling effect in this case, I make my opinion on that point more full and particular than the one I submitted at the term.

It is fully proved, and, indeed, the plaintiffs admit, that by the undisputed law of that State, had these plaintiffs undertaken there to claim this property, as being theirs by the assignment from Bates, the defendants, as creditors of Bates, having by their attachment, obtained the first actual possession, would have held the property. That is to say, by the law of Illinois, the property was then Bates' as in favor of the attaching creditor whose attachment was levied against the assignees, whose attempt to take actual possession was subsequent to that levy.

The defendants, having thus attached what, by the laws of the land where they sued, was Bates' property, pursued their remedy to judgment (the property being all the time in the custody of the law), and under an execution on that judgment, they sold Bates' property. After that sale, the plaintiffs in New York commenced this suit against the defendants, for having committed a trespass in selling the plaintiffs' property on that execution, as, by the law of New York, the assignment passed the title of this property to the plaintiffs prior to the levying of the attachment.

There is no pretence that there was any attempt on the part of the defendants to overreach the plaintiffs, or that there was any unfairness in their proceeding, since the case shows that the suit in Illinois was commenced and the attachments levied, before the defendants knew that Bates had assigned the property to the plaintiffs, and both parties were *bona-fide* creditors of Bates, having equal equities, and both and Bates were residents of New York.

To the judgment of the court of Illinois we are bound to give "full faith and credit" (*U. S. Const.*, art. 4, § 1), and also to their public acts. Now had the State of Illinois a statute by which this property (as between these two parties) was Bates', and was held as such by the attachments; can there be the least doubt, that giving full faith and credit to their public acts would compel us to treat this property as Bates', and held by the attachment? . Would there be any wrong in saying that

when Bates put his property in Illinois, he made it subject to the law of Illinois. And I am unable to see that because the rule before us is one of the common law of Illinois, it enters any the less absolutely into the essence of their judgment. A judgment in a suit commenced by attachment, acts *in rem*, and where the defendant is a non-resident, and is not personally served with process, it acts only *in rem*, as much so as if the subject of the suit were land situated where the suit is brought.

Parties who send personal property to a foreign jurisdiction are as much bound by its laws as to that property, as they would be in regard to land there situated, whenever under that foreign jurisdiction and by its laws, a lien on, or a right or title to, that personal property attaches.

In this case, by the law of Illinois, the defendants, when their attachment-suit went to judgment, had a lien on this property (which lien related back to the time of levying the attachment), which was by the sale perfected, as of the date of the levy, into a title immediately derived from, and succeeding to, Bates' title; and these plaintiffs never had any title in that State, and by its laws never could have any as against these defendants. As I understand the authorities, this view is fully sustained by them. Story's Conflict of Laws (§ 550) says: "whenever personal property is taken by arrest, attachment, or execution within a State, the title so acquired under the laws of the State is valid in every other State." (3 *T. R.*, 733; 9 *Mass.*, 468.)

For illustration, take a case which would seem closely analogous to the one before us. Were it the law of Illinois that a common carrier has not a lien for his charges upon the goods carried, and were a citizen of this State, acting as a common carrier, to transport for a citizen of this State, goods through this State to Chicago; and there the owner of the goods were to take them from their place of storage in disregard of the carrier's claim for, and demand of, his charges (let the taking be with or without legal process), could the carrier (having there made the demand for the return of the goods), on the return of both parties to this State, sue the owner for the taking of the property in disregard of the lien, the qualified title which our law would have given him had the property reached the end of its transportation here? Very plainly not.

I think a principle, similar to the one I hold, has been held

at general term, in the first district. A passenger on a steamboat was killed by the explosion of the boiler, within another State, and the passenger's administrator, being a resident of this State, sued the proprietors of the boat in our court, under our statute, which gives damages in such cases, and jurisdiction of the persons of the defendants was obtained by due service of process.

The defendants demurred to the complaint, and the demurrer was sustained, because, when and where done, the acts of the defendants gave no right of action under our law, which differed from that of the State in whose jurisdiction the injury was inflicted. (18 *How. Pr.*, 335.) I can see no difference between a case where the statute laws so vary, from one where the common law of our jurisdiction is proved to differ from that of another. Having at first paid more attention to this point of the case than to the nature and construction of the instrument by which Bates transferred the property to these plaintiffs, I allowed the transfer to pass as a valid one. But upon more careful examination I am by no means satisfied that a debtor can transfer one part of his property to secure or pay certain creditors, with a proviso that it shall not be sold except at a specified price, or at such reasonable price as the assignor or one of the assignees should in writing approve. It is a provision for an indefinite delay in the application of the property (and the return of the surplus, if any, to Bates or to each of his creditors), at the arbitrary pleasure of the assignor and one of the assignees ; and if valid, no length of delay would authorize a creditor to expedite their movements, and it must be borne in mind, that if such transfer of part of a debtor's property be good, a like transfer of the rest of it must be. So that to sustain this transfer, it is necessary to hold that a general assignment, with such a provision in it, would be good.

For both, or either, of these reasons, I think a new trial should be had, though I am reluctant to dissent from my brethren.