MORRIS S. VANBUSKIRK and others *vs.* JOSEPH M. WARREN and others.

## THE SAME *vs.* HANNIBAL GREEN.

B., being indebted to the plaintiffs, he, for the purpose of paying and securing the amount of their claims, on the 3d day of November, 1857, at the city of Troy, in the state of New York, by a valid instrument in writing executed under his hand and seal, sold and assigned to the plaintiffs 41 iron safes then being in Chicago, in the state of Illinois. The plaintiffs proceeded, without delay, to take possession of the safes; but before they were able to do so, or to make any demand of the same, the defendants, on the 5th of November, 1857, levied upon the safes, at Chicago, as the property of B., by attachments sued out of the court of common pleas of Cook county, Illinois, by them. The property was subsequently sold under executions issued upon judgments perfected in the attachment suits, and never came into the possession of the plaintiffs. One of the plaintiffs resided in the state of Ohio, but all the other parties, plaintiff and defendant, together with B., resided and did business in the state of New York, where the plain-

Vanbuskirk *v.* Warren.

tiffs' debts as well as those upon which the attachments issued, were contracted.

*Held,* 1. That the rights of the parties were to be determined by the laws of New York, and not by those of Illinois.

2. That the title to the property having been changed, by a valid sale and transfer thereof from B. to the plaintiffs, before the levy of the defendants' attachments thereon, the plaintiffs had the prior right.

3. That the plaintiffs not being either parties or privies to the proceedings and judgments in the attachment suits, in Illinois, were not bound by them, nor estopped from contesting, in the courts of New York, the title to the property.

4. That if the assignment was valid, and passed the title to the safes, as against B., it was equally valid as against the defendants, who were only creditors at large, and not in a position to attack the assignment as fraudulent. That the act of attaching, as creditors at large, the assigned property, did not put the defendants upon the footing of *bona fide* purchasers for value without notice, so as to enable them to call in question the validity of the act of B. in disposing of the property. GOULD, J. dissented.

The law of the owner's domicil determines the validity of every transfer, alienation or disposition made of personal property by the owner; and the nature and construction of personal contracts is to be controlled by the *lex loci contractus. Per* WRIGHT, J.

This is the general rule, *ex comitati;* but a particular state may, by its statute or customary law, make special provisions in respect to personal property actually within its territory, in favor of its own citizens, as it has entire dominion over it while therein, in point of sovereignty or jurisdiction. *Per* WRIGHT, J.

A voluntary transfer of personal property, which is valid by the law of the owner's domicil, is valid every where, unless the law of the particular sovereignty in which it is situated has abrogated, or is in contravention, in special cases, of the general rule of the public law. *Per* WRIGHT, J.

THESE were respectively actions in the nature of the former actions of trespass or trover, to recover from the defendants the value of 41 iron safes, alleged to belong to the plaintiffs, and to have been wrongfully taken and carried away by the defendants. The safes were levied on by attachments sued out by the defendants, respectively, against John W. Bates. The property was subsequently sold under executions issued upon judgments perfected on the attachments in the court of common pleas of Cook county, Illinois. The plaintiffs were creditors of John W. Bates, in various

Vanbuskirk v. Warren.

amounts, to whom, for the purpose of paying and securing them the amount of their respective claims and protecting them from loss, he had, at the city of Troy, on the 3d day of November, 1857, sold and assigned the safes in question, they then being in Chicago in the state of Illinois; together with other safes at other places in the western states, and certain moneys, accounts and evidences of debt due upon sales of other safes at the west. Such sale and assignment were made by an instrument under his hand and seal, dated on the 2d day of November, 1857, and executed, acknowledged and delivered on the 3d day of November, 1857. The plaintiffs proceeded without delay to take possession, under said instrument, of the property included therein, but were prevented from taking possession of said attached safes by said attachments having been levied thereon previously to any demand made by the plaintiffs, at Chicago or elsewhere, of said safes. Such attachments were levied on the 5th day of November, 1857, at Chicago. The attached property was taken into the possession of the defendants, and never came into the possession of the plaintiffs. Judgments were perfected in the attachment suits, by the defendant, on the 9th day of June, 1858; in the first case for the sum of $1826.77, and in the second case for the sum of $1168.30. Woodbury, one of the plaintiffs, resided in the state of Ohio, but all the other parties, plaintiff and defendant, and also said Bates, resided and did business in the state of New York. The debts also originated there. The causes were tried at the Rensselaer circuit in February, 1859, before the presiding justice, without a jury. Evidence was given of the value of the safes, and it was agreed that if the plaintiffs recovered, the amount of the entire recovery was to be apportioned ratably in the two cases, according to the amount of the several judgments obtained in the attachment suits by the respective defendants, against John W. Bates.

The following opinion was given by the justice before whom the action was tried, at the circuit:

HOGEBOOM, J. " The plaintiffs sue in an action analogous to one of trespass or trover, to recover the value of 41 safes, formerly the property of John W. Bates, and *levied* upon by the defendants at Chicago, in the state of Illinois, on the 5th day of November, 1857, under attachments against Bates, issued in behalf of the defendants and valid by the laws of Illinois. Judgments were subsequently and on the 9th day of June, 1858, obtained against Bates by default, in the attachment suits, executions issued thereon, and upon them the safes which had been previously attached were *sold* at Chicago, and the proceeds went to the benefit of the defendants. This constituted the title and justification of the defendants. Upon demand made by the plaintiffs, the defendants refused to return the safes, or account for the proceeds.

On the 3d day of November, 1857, Bates, then and theretofore being the owner of the safes, and being indebted to the plaintiffs, severally, in various amounts which are specifically stated, in consideration thereof and for the purpose of securing the payment of such indebtedness and protecting them against any loss, sold, assigned and set over to them by an instrument under his hand and seal, dated the 2d and acknowledged the 3d day of November, 1857, all and every of said safes, and also with some exceptions all sums of money due or to become due, and accounts, securities and evidences of debt arising from the sales of other safes, and authorized them to take possession and control of said safes, (thereby sold to them,) and to sell the same at the usual prices at which such safes had been sold by Bates, or at such reasonable prices as said Bates or Pickett (one of the plaintiffs) should in writing approve, and to collect the moneys, accounts and evidences of debt transferred, and after deducting the reasonable costs and expenses of sales and collections, to apply from time to time the residue of the proceeds derived therefrom in payment of said debts, *pro rata*, until, if such

residue should suffice therefor, the said debts should be fully paid.

At the time of this last mentioned sale or assignment, said safes were in Chicago, in the state of Illinois, in a store occupied by a salesman or agent of Bates. The plaintiffs never had actual possession of the safes, but were proceeding without delay to take possession thereof under said instrument, and were prevented from taking possession by said attachments having been levied thereon previously to any demand made by the plaintiffs, at Chicago or elsewhere, of said safes. At the time said attachments were levied, the defendants were without any knowledge, information or notice of the assignment in question, and the plaintiffs were equally ignorant of the attachments and attachment proceedings. Soon afterwards, and before any further proceedings in the attachment suits, the parties were mutually notified of each other's claims and proceedings and of their respective sources of title.

Bates, and all of the parties, plaintiff and defendant, before, during, and since November, 1857, were and still are residents and citizens of the state of New York; except the plaintiff Woodbury, who resided in Ohio. The defendants and most of the plaintiffs resided and did business in the city of Troy. Bates manufactured there the safes in question, and the defendants sold to him there the *iron* of which the safes were made, and which iron entered into and formed the consideration of the judgments in the attachment suits which were subsequently perfected in Illinois.

The question arising upon this state of facts is, which has the better title to these safes, the plaintiffs or the defendants, and if there be a conflict between the law of New York and that of Illinois, on this question, which is to prevail? The defendants allege that the transaction between Bates and the plaintiffs was not an actual sale of the safes, but an assignment fraudulent and void upon its face, as against other creditors of Bates, imperfect and never consummated, either as a sale or assignment, for want of actual or constructive de-

livery of the property sold or assigned, and at all events subordinate to the claims of the defendants by the laws of Illinois; and therefore that they cannot be made liable as trespassers or wrongdoers for the taking and conversion, in Illinois, of property to which, by the laws of that state, they had a right superior to that of the plaintiffs. The plaintiffs, on the other hand, contend that they are prior in point of time, and therefore superior in point of right; that by the laws of New York the sale or assignment to them would take preference of the subsequent attachment of the defendants; that personal property has no locality, but follows the domicil of the owner; that the transaction must therefore be governed by the laws of New York, and the more especially as not only all the parties, (except one of the plaintiffs,) including Bates, resided and did business here; but that the assignment was made here; and this, also, is the forum selected for enforcing the rights of the parties, no other having been previously selected or occupied for settling the controverted rights of the parties litigating in these actions.

If the transaction is to be determined by the law of Illinois, the defendants must prevail. It is there held that in a case similar to this the defendants are to be regarded in the light of bona fide purchasers for a valuable consideration, without notice of the plaintiffs' rights, and having *first* acquired legal possession, are by that circumstance entitled to a preference over the plaintiffs. A case very similar to the present is reported in 5 *Gilman's* (*Illinois*) *Rep.* 282, (*Burnett* v. *Robertson.*) The action was replevin to recover certain stage horses and harness, by the plaintiffs as the assignees and vendees of O. Hinton & Co. against the defendant, who justified under attachments against the same parties. "O. Hinton & Co. were mail contractors, and the former owners of the property, and on the 10th day of February, 1847, at *St. Louis,* had conveyed them, with other property, upon different stage routes, in Illinois, Iowa and Wisconsin, to the plaintiffs, who were their creditors, and who, immediately

Vanbuskirk *v.* Warren.

after the execution of the bill of sale, proceeded as fast as possible to take possession of the property conveyed, but before they had taken possession of the property in question, which was upon the stage route between Peoria and Ottawa, in Illinois, it was seized, in the county of Marshall, by the defendant, on the 14th day of February, 1847, as an officer, under various writs of attachment sued out in the county of Marshall, against O. Hinton & Co." The question turned mainly on the point of delivery. The court held that there was no actual delivery, as against the defendant; and that the attaching creditor was to be regarded in the same light as a purchaser, who in the case of two sales of personal property, both equally valid, had first obtained possession and thereby acquired the better right; that the plaintiffs not having obtained actual possession, nor exercised any acts of ownership over the property before the levy of the attachment, nor having given notice to the party in actual possession, of their title, and obtained his consent to hold them for their benefit, had not perfected their possession, and must fail; that it would operate injuriously upon trade and be unjust to purchasers, if purchasing in good faith from a party in actual and rightful possession and having authority to sell, they could not be protected against a purchase prior in point of date, but unaccompanied with delivery of possession; and that in the case of two innocent parties, he ought to suffer who purchases property knowing it to be at a distance and incapable of being reduced to immediate possession.

But the law of Illinois is not the law which must govern the case. The domicil of the parties, the act of assignment, and the forum of controversy being in the state of New York, the law of the latter state must govern. It is always to be regretted that a different rule should prevail in different states or countries; but when this does in fact occur, there are controlling circumstances which regulate the action of judicial tribunals. The first is, that as a general proposition, personalty follows the person, and that voluntary sales or

assignments of personal property, made by the owner at the place of his residence, are construed by the law of the state of the owner's domicil. (*Story's Conflict of Laws*, §§ 379, 380, 383, 384, 242, 406. 2 *Kent's Com.* 429, *lect.* 37. *Holmes* v. *Remsen*, 20 *John.* 229. *Johnson* v. *Hunt*, 23 *Wend.* 87. *Hoyt* v. *Thompson*, 1 *Seld.* 320. *Abraham* v. *Plestoro*, 3 *Wend.* 538.) There are some exceptions to this rule where the statute law, and perhaps the judicial decisions of a particular state, owing to peculiar circumstances, make special provisions in regard to personal property actually within its territory, in favor of its own citizens. (*Story's Conflict of Laws*, §§ 244, 383, 325, 549, 550, 414, 416.) But the present is not such a case. On the contrary, not only the subject of controversy was owned in the state of New York, and there conveyed or assigned, but the debts of all the parties originated there, the residence of all the parties is there, and the controversy is conducted there. A different question might arise if this litigation had first commenced, between the parties to this suit, in the state of Illinois. It is quite possible that a judgment perfected in such a suit between the same parties, conducted in Illinois, whether resulting in favor of the one party or the other, might be regarded as conclusive upon them in this state, upon the ground that full faith and credit must be given by each state to the judicial proceedings of its sister states. (*U. S. Const. art.* 3, § 4. *Story's Confl. of Laws*, § 609. *Shumway* v. *Stillman*, 6 *Wend.* 447. *Dobson* v. *Pearce*, 1 *Duer*, 142. *Baker* v. *Rand*, 13 *Barb.* 152.) But that question does not arise.

We must then look at the question as it stands in the state of New York. I feel no great difficulty in determining the objections raised to the instrument of sale or assignment, upon its face, in favor of the plaintiffs. I think it conveys, absolutely and immediately, to the plaintiffs, the legal title to the property. It purports so to do, and such was, I think, the intention of the parties. If it had been lost or destroyed after the execution and delivery of the instrument, the loss

would, I think, have fallen upon the plaintiffs.    Certain acts, it is true, were to be done by the plaintiffs under the instrument, but not so much, I think, to perfect the title as to regulate the price.    The sale or assignment was not in trust for other creditors, but directly to the plaintiffs, for their own benefit, and in satisfaction *pro tanto,* or altogether, of their claims.    (*Leitch* v. *Hollister,* 4 *Comst.* 211.)    They were to take possession, but this is consistent as well with an actual transfer of title as with the idea that it was a mode of perfecting title.    They were to sell the safes at the usual prices ; but, as before stated, this was a mode of regulating the price. If they omitted to do it, it did not vitiate the transfer, but would charge the plaintiffs with their value at the usual price.    But the plaintiffs not wishing to be charged absolutely with such price as they might be unable to obtain, it was further provided that they might be sold at such reasonable prices as Bates or Pickett might, in writing, approve. This was but a mode of regulating the value.    It conferred no such power on the assignor, over the property, as evinced a fraudulent purpose to reserve some interest therein for his own benefit or was calculated to defraud other creditors.    No other creditors had any interest in this property, unless the whole scheme was a fraudulent contrivance to dispose of the property for the assignor's own benefit, or for less than its value ; and neither of these is fairly inferable.    Bates had no absolute veto upon the sales, but only in a particular contingency a very limited power over them, to prevent a sacrifice of the property.    The plaintiffs had the absolute right to sell at the usual prices, or at such reasonable prices as one of their number (Pickett) should in writing approve, or as Bates himself should approve.    And I think they had the absolute right not to sell at all, or to sell at such prices as they pleased, subject to the contingency that in case they did not conform to the injunctions of the instrument, in the mode of disposing of the property, they should be chargeable with the property at the usual prices.    The whole seems to have been an

arrangement, and not an unfair or an injudicious one, to prevent on the one hand a sacrifice of the property by the plaintiffs, and on the other to prevent them from being subjected to the payment of an exorbitant price therefor—the true value not being at the moment capable of absolute ascertainment. If, in the event, there turned out to be a surplus over and above the payment of the plaintiffs' debts, I do not see but that the plaintiffs would hold the same as trustees for Bates or his creditors, but I discover no difficulty in the latter reaching the same, or any attempt to tie it up or protect it against their just demands. (*Leitch* v. *Hollister,* 4 *Comstock,* 211.)

The difficulty which has presented itself to my mind, if any in fact there be, is as to the delivery of possession of the assigned property. Was such delivery indispensable, to consummate the change of title; or was it sufficient that the delivery should be accomplished within a reasonable time thereafter, provided the parties were acting in good faith? *Immediate* delivery, it is true, is the usual accompaniment and manifestation of an executed sale of personal property; and if it does not take place, is a circumstance from which to infer fraud. But it is not an indispensable element in any sale, and after all, can only be regarded as a matter of more or less suspicion, according to the nature of the case. Our statute only raises a *presumption* of fraud, in such a case, even where the goods and chattels are at the time of the sale in the possession or under the control of the vendor, and so capable of immediate delivery; which presumption becomes fixed and conclusive evidence of fraud, to be sure, as against creditors and purchasers in good faith, unless rebutted by evidence, that the sale or assignment was made in good faith and without any intent to defraud such creditors or purchasers. (2 *R. S.* 136.) If, then, there are circumstances, as in this case, showing a reason why immediate delivery could not be effected, to wit, that the goods were at the moment many hundred miles distant, (*Nash* v. *Ely,* 19 *Wend.* 523;) if

Vanbuskirk *v.* Warren.

the parties were proceeding, as is conceded in the case, with due diligence to consummate the transfer of possession; if there was in fact good faith; and the existence of the debts and the actual and *bona fide* character of the consideration tend to show that fact; if there was no intent to defraud creditors or purchasers, and the uncontradicted evidence tends to repel such intent; then the present appears to be a case in which, according to my understanding of the law, the plaintiffs must recover. The defendants must, I think, stand or fall by the circumstance of non-delivery of possession for two days; and as already stated, that at most is a circumstance of suspicion and not controlling evidence of fraud, and the suspicious circumstances, if any exist, are, I think, sufficiently explained. The contrary position is ably maintained in the case from 5 Gilman's Reports, already quoted, but I am not sure that the learned court who pronounced that opinion did not go too far, in the first place, in putting the attaching creditor upon the same footing as a *bona fide* purchaser for value, without notice, and, in the second place, in saying that a purchaser of the latter character would be, under the circumstances, protected. I am not sure, also, that they were not considerably influenced by the circumstance that in that state the omission to deliver possession makes the sale *absolutely* void; for such I understand to be the law of that state, (1 *Stat, of Illinois, ed, of* 1858, *p.* 562; *Thornton* v. *Davenport,* 1 *Scam. Ill. Rep.* 293; *Ketchell* v. *Brutton, Id.* 303 ; *Rhines* v. *Phelps,* 3 *Gil.* 455,) as it certainly is not of this. Be that as it may, it is, I think, sufficient to say that the case must be decided by the law of New York, and that, I think, turns the scale in favor of the plaintiffs.

On the subject of damages, the plaintiffs, if they are entitled to recover, are entitled to the fair market value of the safes, with interest from the time of the conversion. This does not mean, necessarily, the wholesale price of the safes, sold together in one body to a single purchaser, but such

price as at the place where they actually were, they would have brought, either singly or in parcels, as good judgment would dictate, when offered for sale, to such purchasers as would be likely to present themselves, or as would be convened at a public sale upon proper notice. Tested by these rules, I am of opinion that the fair price of the safes was, on the 5th of November, 1857, 95 per cent of what is called in the evidence the list prices, with freight added, and interest thereon from the last mentioned date. I think such is the price with which the plaintiffs themselves would have been chargeable, as between them and Bates, if their transactions had closed on the 5th of November, 1857. And there is no reason why the defendants, if they appropriated the property without right or authority, as they must be held to have done, should be entitled to a more lenient rate of damages.

There must therefore be judgment for the plaintiffs, in each case, for their proper proportion of the above amount, to be graduated according to the stipulation of the parties, as against the defendants in each case, by the amount of their respective judgments against Bates, with costs of the actions, respectively."

From the judgment entered in accordance with the above decision, the defendants appealed, in each case, to the general term.

*D. L. Seymour,* for the appellants.

*J. B. Gale,* for the plaintiffs.

WRIGHT, J. I concur in the opinion that the questions, whether there was a valid sale or transfer of the safes to the plaintiffs, and whether title had passed to the latter before the defendants' attachments issued, are to be determined by the law of New York, and not of Illinois. The parties are residents and citizens of this state. Bates, the assignor, re-

sided here. The instrument, by virtue of which the plaintiffs claim, and which the defendants, as Bates' creditors, seek to invalidate, was executed here. So, also, the debts which constituted the consideration for the transfer, as well as those upon which the attachments issued, were contracted in New York. The legal controversy is pending in the courts of this state. Indeed, the property in controversy was manufactured here, though happening to be in the hands of Bates' agent, in Illinois, at the precise period of the attempted transfer. Under these circumstances, if it should be conceded that the law of Illinois differs from ours, the validity of the transfer is to be tested and determined by the law of this state. The law of the owner's domicil determines the validity of every transfer, alienation or disposition made of personal property by the owner; and the nature and construction of personal contracts is to be controlled by the *lex loci contractus.* This is the general rule *ex comitati;* but a particular state may, by its statute or customary law, make special provisions in respect to personal property actually within its territory, in favor of its own citizens, as it has entire dominion over it while therein, in point of sovereignty or jurisdiction. A voluntary transfer of personal property, which is valid by the law of the owner's domicil, is valid every where, except the law of the particular sovereignty in which it is situated has abrogated, or is in contravention, in special cases, of the general rule of the public law. It is not to be assumed, in the absence of evidence, that the *lex domicilii* does not govern in Illinois in the case of a voluntary transfer and disposition of personal property by the owner, as well as in this state; nor that if this case were pending in that state, the nature, validity and construction of Bates' assignment would not be determined by the law of New York. The remedy to be pursued *in invitum* as against personal property, is controlled by the state in which such property actually is; but because a citizen of a foreign state may elect to pursue such remedy against the property of another foreign

citizen temporarily within the jurisdiction of a particular state, it does not follow that a controversy respecting the title of such property is to be determined by the law of the latter state. Were the controversy pending in the latter state, this would be assuming that the *lex domicilii* did not govern them. This litigation, however, which involves simply the question whether property in the safes had passed to the plaintiffs before they were attached for the debt of Bates, is pending here, and, I think, is to be determined by our law.

Now, by the law of this state, was there a valid sale and transfer of the property to the plaintiffs prior to the issuing of the attachments; for if there was, the defendants were not justified in attaching it for the debt of Bates. On the argument, I supposed this to be the principal, and the gravest question in the case. Upon a careful examination, however, I have become satisfied that the transfer was valid, and that Bates, by the instrument executed on the 2d November, 1857, effectually divested himself of all title to the property itself. He manifestly intended to transfer the property directly to the plaintiffs, his creditors, by way of security. No trust was designed; the legal effect of the provisions of the assignment was not to create any; and the legal title passed immediately and absolutely to the plaintiffs. Bates never could have invalidated the sale and reclaimed the property, on the ground of fraud, or that delivery of possession of the subject matter of the assignment, which was at a distance, did not accompany a delivery of the instrument itself. But the court below found that there was no fraud in fact; there is none in law arising from the provisions of the instrument, and no proper parties to raise the question if there had been any; and immediate delivery was not indispensable to consummate a change of title. There may be a valid sale of personal property, and the title will pass to the vendee, though unaccompanied by immediate delivery. Our statute makes an assignment of chattels unaccompanied by an immediate delivery *presumptively* fraudulent as against the cred-

itors; that is, the judgment creditors of the person making such assignment, or subsequent purchasers in good faith; but even as respects these classes of persons, (and they are the only ones that can raise the question of fraud,) it is not required that delivery should accompany the written instrument of transfer, to pass the title to the thing transferred. The fact that the assigned property was not delivered simultaneously with the instrument, does not prevent a change of ownership; but only casts suspicion upon the fairness and good faith of the transaction, and; as against the creditors of the assignors, or subsequent purchasers without notice of the assignment, throwing the *onus* upon the assignee to show that the assignment was made in good faith, and without any fraudulent intent. If the assignment in this case was valid, and passed the title to the safes, as against Bates, it was equally so against the defendants, who were only creditors at large, and not in a position to attack such assignment as fraudulent. They had not proceeded to judgment and execution, and thereby placed themselves in a position that the assignment interfered with the assertion of their right to the property in question; and until this was done, they were equally bound by Bates' acts, as Bates was himself. The act of attaching, as creditors at large, the assigned property, did not put them upon the footing of *bona fide* purchasers for value without notice, so as to enable them to call in question the validity of the act of Bates in disposing of such property. Were this otherwise, however, there is no provision of the assignment having the effect to hinder, delay or defraud Bates' creditors. It is true, that the effect is to give a preference to certain of his creditors, which he had the right to do; but if the transaction is to be regarded as clothing the plaintiffs with a trust, there is no provision of the instrument operating as a restraint upon the discretion of the trustees, or any conditions imposed which would hinder or delay Bates' creditors in reaching any surplus that might remain after the satisfaction of the plaintiffs' demand. With regard

Vanbuskirk *v.* Warren.

to the provisions as to the mode of selling, and the price to be obtained for the assigned property, I entirely concur in the view taken, and the construction placed on them, by the learned judge at the circuit.

If the title to the property had been changed, it could not be legally attached for a debt due from Bates. It was no more lawful, in Illinois, to attach A.'s property for the debt of B., than it would have been in New York. It is supposed, however, that because the plaintiffs had notice of the attachment suits, and permitted them to go to judgment undefended, they are in some way concluded or estopped, by such judgment, from contesting in the courts of this state the title to the property. This cannot be so. The plaintiffs were not bound to interpose their claim of title in the suits in Illinois, or be barred. They were not parties, or, in any legal sense, privies to that litigation. Because the defendants had chosen to attach their property for the debt of another, and they were casually notified of the illegal act, and suffered the proceeding to go undefended, they are not consequently concluded by the judgment subsequently obtained. The defendants were wrongdoers in issuing and levying the attachment, and the subsequent acts of taking judgment and selling the property, were but further illegal steps. In pursuing their remedy against the property they could only acquire and sell, by force of their judgment, the title and interest of Bates, if he had any. If they wrongfully attached the property of strangers, though those strangers may have been casually informed of the proceeding and did not come in and defend, or demand a delivery of the property and bring suit, I am unable to perceive how a judgment against Bates, or *in rem* as against the property of Bates, can estop the real owners of the property from asserting their title in an action against the wrongdoers.

I think that the action was well tried, at the circuit, and that the judgment is right. I vote for an affirmance of the judgment.

Vanbuskirk *v.* Warren.

HOGEBOOM, J. (After stating the facts.) Under these circumstances the question arose, which party was entitled to prevail ; in other words, which party was to be regarded, in this state and in these actions, as having the better title to the iron safes. My brother Gould is of opinion that the judgment of the circuit court was erroneous and should be reversed, for the reason that the defendants are protected by the *judgment* which they have obtained in the attachment suits against Bates in Illinois ; that inasmuch as the attachment suits in Illinois were not defended, nor any stay of proceedings obtained therein, nor these suits brought to bar the attaching creditors' title in Illinois, but the attaching creditors were allowed to proceed to judgment and execution, in Illinois, before these suits were instituted, the plaintiffs' remedy, if any they had, was lost ; that the defendants have been allowed to perfect title to the property in Illinois ; that full effect must be given to the judgment of that state, and damages cannot be awarded in the courts of this state against the defendants for asserting, in Illinois, their rights under a judgment of the courts of that state, valid when rendered and valid by relation, and of force from the time of the attachment levied ; that if the plaintiffs had desired to contest the rights of the attaching creditors to the property in dispute, they should have come in and defended in the attachment suit, or should have seasonably demanded the property, and if not delivered, brought suit for it prior to the entry of judgment in the attachment suit ; and that the plaintiffs, by failing to act on the notice which they had of the attachment, in Illinois, and by allowing the attachment suit there to proceed to judgment without interposing there any claim of title, have put themselves in a position where they cannot contest the question ; that by force of the Illinois judgment the property has been sold as the property of Bates, and at the time of the first demand, in New York, of the property in question, by the plaintiffs, of the defendants, the property was in the *custody of the law* in the state of Illinois, and the proper per-

son of whom to make the demand was the sheriff of Cook county, Illinois, who must be sued in Illinois, and who is not sued here; and that for these reasons the defendants must prevail.

In these views I cannot concur. I cannot perceive any such conclusiveness in the Illinois *judgment,* as against these plaintiffs, as is claimed for it. The proceedings are between different parties. The plaintiffs in this case are in no proper sense either parties or privies to those proceedings, and there- fore are not bound by them. The attachment suit and pro- ceedings must have been between the present defendants, as plaintiffs, and John W. Bates, or some one holding under him, as defendant. The present plaintiffs were strangers to them. Nor do I see that the fact that they became cognizant of those proceedings after the levy of the attachment, and be- fore the judgment, can in any manner affect them. They had no right—at least they would have no right in this state —to intervene in those proceedings. My learned brother supposes that in Illinois the assignees would have *had a right* to come in and defend the attachment suits. I do not know how this is; but it would be necessary to go at least one step farther before those proceedings could assume the character of an estoppel; to wit, that the assignees should be *bound* to come in or be barred. In such event, it is possi- ble that the judgment would be conclusive upon the present plaintiffs as being one to which they were in effect either par- ties or privies. But I know of no such law or adjudication in Illinois, and it has not been contended for by counsel in this case.

The Massachusetts cases of *Whipple* v. *Thayer,* (16 *Pick.* 25,) *Daniels* v. *Willard,* (*Id.* 36,) and *Burlock* v. *Taylor,* (*Id.* 335,) all hold that an assignment made by an insolvent, in another state, valid by the laws of that state, is valid in Massachusetts, so far as to protect personal property situated in Massachusetts at the time of making it, against an attach- ment in Massachusetts made by a citizen of the state where

the assignment was made. It is true the question was tested by a suit brought in Massachusetts by the assignees, against the attaching creditor, or the officer levying the attachment, previous to judgment in the attachment suit. But I cannot see how the position or rights of the assignees would have been prejudiced by waiting until after a sale upon execution, under the judgment in the attachment suit. Taking judgment, issuing execution and making sale thereupon, would only have been *additional* illegal steps to the *primary* one of issuing and levying the attachment upon property not subject to it.

The Massachusetts decisions do not, therefore, as has been supposed, favor the views contended for on behalf of the defendants. On the contrary, if they prevailed in Illinois they would be decisive to show that if the present plaintiffs had brought this action there, they, as citizens of New York, showing title to property in Illinois valid by the laws of New York, where the assignment was made, as against the defendants, citizens also of New York, would have been successful against the defendants in Illinois.

The Illinois proceedings are not therefore an estoppel, and we are driven back to the two questions, first, whether in a case like the present the law of Illinois or the law of New York is to govern ; and if the latter, then whether the plaintiffs' title is superior to that of the defendants by the law of New York. I have debated these questions at sufficient length in the opinion delivered at the circuit, and I have seen no reason, since the more extended and elaborate argument here, materially to change the views then expressed.

Perhaps some of the grounds upon which the propriety of determining the right to the property in question by the law of New York, in preference to that of Illinois, rested, were not made sufficiently prominent in the opinion delivered at the circuit. They may be briefly enumerated as follows : 1. The contracting parties to the contract or purchase under which the plaintiffs claim title, were citizens of the state of

New York. 2. The instrument under which the plaintiffs claim was executed and delivered in the state of New York, and the consideration upon which it was based arose in that state. 3. The instrument under which the plaintiffs make title was a voluntary sale or assignment, and not a compulsory one. By a voluntary one is here intended not one without consideration, but one without compulsion — voluntary, as done by the party's own choice and not *in invitum*. 4. The defendants are also citizens of the state of New York. 5. The debts for the collection of which the defendants' attachment proceedings were instituted in Illinois, were contracted and arose in the state of New York. 6. The attachment debtor also resides in the state of New York. 7. The forum of controversy is also in the state of New York.

The only facts upon which the defendants rely are that the property in controversy was situated in the state of Illinois, and was seized there under attachment proceedings regularly issued in Illinois.

These being the facts and circumstances of the case, I understand the law of the state of New York takes preference. (*Hoyt* v. *Thompson*, 1 *Sel.* 352. *Story's Confl. of Laws*, §§ 379, 380, 383, 384, 411. *Holmes* v. *Remsen*, 20 *John.* 258. *Abraham* v. *Plestoro*, 3 *Wend.* 566. *Johnson* v. *Hunt*, 23 *id.* 96. *Martin* v. *Hill*, 12 *Barb.* 631. *Tyler* v. *Strang*, 21 *id.* 198.)

In the case of *Martin* v. *Hill*, (12 *Barb.* 631,) the plaintiff was the mortgagee under a chattel mortgage of certain oxen owned by one Willard, who was indebted to him, and which oxen were left in the possession of the mortgagor under circumstances rebutting the idea of fraud or bad faith. By the law of Vermont such a mortgage, unaccompanied by possession, was void. The mortgagor and mortgagee resided in Washington county, New York. The mortgagor having taken the oxen into the adjoining town of Fairhaven, in Vermont, they were seized upon there by the defendant, who was a constable of that town, by virtue of an execution upon

a judgment obtained in Vermont against the mortgagor, by certain citizens of that state. This action was brought to recover their value, and it was held that the nature, construction, obligation and effect of the mortgage must be determined by the laws of this state, and that the *lex loci contractus* controls as to the validity and construction of personal contracts, and that the plaintiff was entitled to judgment. This was, however, but a special term decision.

In the case of *Tyler* v. *Strang*, (21 *Barb*. 198,) it was held at general term, in the 7th district, that where both the assignor and assignee of a contract are citizens of this state, and the assignment is executed in this state, and the subject of the contract is personal property, upon the general principle that the *lex loci contractus* controls the nature, construction and validity of the contract, the validity and effect of the assignment, and the delivery and change of possession of the property necessary to sustain it, depend upon our laws, although the property itself is situated in another state.

I cite these as comparatively recent cases in our own court in support of the general doctrine, maintained, I think, by the general current of authority, in favor of the applicability of the law of New York to the adjustment of the legal rights of the parties to this controversy.

I think the judgment of the circuit court was correct, and should be affirmed.

GOULD, J. (dissenting.) I find the opinion of a majority of the court conveying, as it seems to me, an erroneous impression of the law of the state of Illinois. And as I deem that law to have a controlling effect in this cause, I make my opinion on that point more full and particular than the one I submitted at the term.

It is fully proved, and indeed the plaintiffs admit, that by the undisputed law of that state, had these plaintiffs undertaken *there* to claim this property, as being theirs by the assignment from Bates, the defendants, as creditors of Bates,

having by their attachment obtained the *first actual* possession, would have held the property. That is to say, by the law of Illinois, the property was *then Bates'* as in favor of the attaching creditor whose attachment was levied, against the assignees, whose attempt to take *actual possession* was subsequent to that levy.

The defendants, having thus attached what, by the law of the land where they sued, was *Bates'* property, pursued their remedy to judgment, (the property being all the time in the custody of the law;) and under an execution on that judgment they sold *Bates'* property. *After* that sale, the plaintiffs in New York commence this suit against the defendants, for having committed a trespass in selling the *plaintiffs'* property, on that execution; as, by the law of *New York,* the assignment passed the *title* of this property to the plaintiffs, prior to the levying of the attachment.

There is no pretense that there was any attempt, on the part of the defendants, to overreach the plaintiffs; or that there was any unfairness in their proceedings; since the case shows that the suit in Illinois was commenced, and the attachment levied, before the defendants knew that Bates had assigned the property to the plaintiffs. And both parties were *bona fide* creditors of Bates—having equal equities—and both, and Bates, were residents of New York.

To the judgment of the court of Illinois we are bound to give "*full faith and credit,*" (*U. S. Const., art.* 4, § 1,) and also to their *public' acts.* Now, had the state of Illinois a *statute,* by which this property (as between these two parties) was *Bates',* and was held *as such* by the attachment, can there be the least doubt that giving full faith and credit to their public acts would compel us to treat this property as Bates', and held by the attachment? Would there be any wrong in saying that when Bates put his property in Illinois, he made it subject to the law of Illinois? And I am unable to see that, because the rule before us is one of the common law of Illinois, it enters any the less absolutely into the

essence of their judgment. A judgment, in a suit commenced by attachment, acts *in rem;* and where the defendant is a non-resident, and is not personally served with process, it acts *only in rem;* as much so as if the subject of the suit were land situated where the suit is brought. Parties who send personal property to a foreign jurisdiction are as much bound by its laws as to that property as they would be in regard to land there situated, whenever, under that foreign jurisdiction, and by its laws, a lien on, or a right or *title* to, that personal property attaches. In this case, by the law of Illinois, the defendants, when their attachment suit went to judgment, had a lien on· this property, (which lien related back to the time of levying the attachment,) and which was by the sale perfected, as of the date of the levy, into a *title,* immediately derived from, and succeeding to, Bates' title. And these plaintiffs never had any title in that state, and by its laws never could have any, as against these defendants.

As I understand the authorities, this view is fully sustained by them. Story (*Conflict of Laws,* § 550,) says, " whenever personal property is taken by arrest, *attachment* or execution within a state, the title so acquired under the laws of the state is valid in every other state." (3 *T. R.* 733. 9 *Mass. Rep.* 468.) For illustration, take a case which would seem closely analogous to the one before us: Were it the law of Illinois that a common carrier has not a lien for his charges upon the goods carried; and were a citizen of this state, acting as a common carrier, to transport for a citizen of this state goods through this state to Chicago; and there the owner of the goods were to take them from their place of storage in disregard of the carrier's claim for, and demand of, his charges, (let the taking be with or without legal process;) could the carrier, (having there made demand of the return of the goods,) on the return of both parties to this state, sue the owner for the taking of the property in disregard of the lien—the *qualified title*—which our law would

have given him had the property reached the end of its transportation here? Very plainly not.

I think a principle similar to the one I hold, has been held at general term, in the first district. A passenger on a steamboat was killed by an explosion of the boiler, within another state; and the passenger's administrator, being a resident of this state, sued the proprietors of the boat, in our court, under our statute, which gives damages in such cases; and jurisdiction of the persons of the defendants was obtained by due service of process. The defendants demurred to the complaint, and the demurrer was sustained, because *when, and where done*, the act of the defendants gave no right of action under our law, which differed from that of the state in whose jurisdiction the injury was inflicted. (18 *How. Pr. Rep.* 335.) I can see no difference between a case where the statute laws so vary, and one where the common law of one jurisdiction is proved to differ from that of another.

Having at first paid more attention to this point of the case than to the nature and construction of the instrument by which Bates transferred the property to these plaintiffs, I allowed the transfer to pass as a valid one. But upon more careful examination, I am by no means satisfied that a debtor can transfer one part of his property, to secure or pay certain creditors, with a proviso that it shall not be sold, except at a *specified price*, or at such reasonable price as the assignor, or one of the assignees, shall in writing approve. It is a provision for an *indefinite delay* in the application of the property (and the return of the surplus, if any, to Bates or to the reach of his creditors,) at the arbitrary pleasure of the assignor and one of the assignees; and, if valid, *no length* of delay would authorize a creditor to *expedite* their movements. And it must be borne in mind, that if such a transfer of *part* of a debtor's property be good, a like transfer of the rest of it must be. So that, to sustain this transfer, it is necessary to hold that a general assignment with such a provision in it would be good.

The People *v.* Taylor.

For both, or either, of these reasons, I think a new trial should be had; though I am reluctant to dissent from my brethren.

Judgment affirmed.

[ALBANY GENERAL TERM, May 7, 1860. *Wright, Gould* and *Hogeboom,* Justices.]