RECEIVER OF THE STATE BANK AT NEW BRUNSWICK

*v.*

THE FIRST NATIONAL BANK OF PLAINFIELD.

1. A transfer of title, by operation of law, can only be effected within the limits of the territory where the law prevails; and, as the laws of a state have no extra-territorial force, it follows that the title to property located in one state cannot be passed by force of the laws of another, except in virtue of the comity or courtesy which prevails among different nations and states by force of international law.

2. No state is bound to give effect to the law of a foreign state when, to do

Receiver of State Bank *v.* First National Bank of Plainfield.

so, will prejudice either the rights of its citizens or the interests of the state; but where a transfer of property is valid by the *lex loci*, no just rule of comity requires the courts of the state where the property happens to be located, to adjudge such transfer to be invalid at the instance of citizens of other states, simply on the ground that it is incompatible with its laws.

3. A debtor cannot discharge his liability to his creditor by seeking some person whom his creditor happens to owe, and paying his debt to him.

4. Suit by receiver of an insolvent bank to recover moneys of the bank received by one of its creditors, subsequently to his appointment.—*Held*, that the complainant could have no relief by petition, but only by bill, and that the fact of his being an officer of the court entitled him to no privilege not accorded to other suitors.

----

On petition, answer and proofs taken in open court.

*Mr. A. V. Schenck,* for receiver.

*Mr. E. W. Runyon* and *Mr. B. Williamson,* for defendant.

Van Fleet, V. C.

The following summary exhibits all the facts material to the controversy in this case :   On the 31st of March, 1877, a petition was filed against the State Bank at New Brunswick, for the purpose of having it declared an insolvent corporation, and put in process of being wound up.   On the same day, an injunction was granted, restraining the bank from exercising any of its franchises, and enjoining its officers from collecting any of its choses in action, or making any disposition of its property. The writ was duly served on the 2d of April following, and the next day the petitioner was appointed receiver.   On the day the petition was filed, the State Bank owed the defendant (the First National Bank of Plainfield) about $4,500.   The defendant was one of the correspondents of the State Bank, and, on the 9th and 10th of April, 1877, collected, on commercial paper theretofore forwarded to it by the State Bank, $470.30.   This sum was not credited on the balance due on the 31st of March, 1877, from the State Bank to the defendant, but still stands to the credit of the State Bank on the books of the defendant.   The National Park Bank, of the city of New York, was also a cor-

respondent of the State Bank, and, on the day the petition was filed, was indebted to the State Bank a trifle over $13,000. The defendant heard, on the 2d of April, 1877, that the State Bank had failed; and on the same day it learned that the National Park Bank owed the State Bank a considerable sum of money. The defendant at once procured proceedings to be instituted in the Supreme Court of New York for the recovery of its debt. The method it pursued was this: On the 3d of April, 1877, it assigned its claim to a citizen of New York, and he, on the next day, at the instance of the defendant, brought an action in the Supreme Court of New York against the State Bank, and judgment was entered therein on the 21st of July, 1877. The judgment so recovered was subsequently paid by the National Park Bank, and the amount charged to the account of the State Bank. The assignment to the plaintiff in the New York suit was entirely voluntary. The reasons assigned for its being made are, that the defendant was advised that its suit against the State Bank could be more expeditiously and efficaciously prosecuted in that form than in its own name, and that it would thereby be relieved from the duty incumbent on non-resident suitors of giving bond with sureties for a large sum. It is admitted that the suit in New York was, in everything but name, the suit of the defendant. The State Bank received actual notice of the New York suit. The petitioner took no step to prevent the National Park Bank from paying the defendant's judgment, nor did he invoke the assistance of the New York courts to get possession of the property of the State Bank located in that state.

Upon these facts, the receiver seeks an order requiring the defendant to pay him not only the $470.30 standing to the credit of the State Bank on the books of the defendant, but also the money recovered and collected by virtue of the New York judgment. The latter branch of the relief claimed is put upon the ground that, by force of law, the title to all the property belonging to the defunct bank, immediately on his appointment as receiver, became vested in him as the officer of this court, and that, consequently, the defendant's conduct was not only a contempt of the authority of this court, but also a fraud upon that

provision of the law respecting insolvent corporations, which directs that creditors without liens shall be paid equally, or proportionally to the amount of their respective debts.

With regard to the first branch of the relief sought, it is manifest that no ground for the interference of this court is shown. The case is the ordinary one where one person owes another a sum of money, and, on demand, has refused to pay. It is marked by no element of fraud, trust, accident, mistake, or other ground of equity cognizance; and, unless this court can entertain an ordinary collection suit, it has no jurisdiction in the matter. It is plain the petitioner has no right to relief here in respect to this claim.

His right to relief, in respect to his other claim, rests on this proposition : that he became invested, by operation of law, on his appointment as receiver, with the title to all the personal property of the corporation, whether located in this state or elsewhere ; and this proposition is based, in turn, on the maxim that personal property has no *situs*, but follows that of its owner— *Mobilia sequuntur personam.* But this maxim does not express the prevailing doctrine with regard to property located in other jurisdictions than that within which the owner is domiciled. It has been said that the statement that personal property has no *situs*, expresses a metaphysical rather than a legal truth ; for it cannot be questioned that goods found within the limits of a sovereign's jurisdiction are subject to his laws, and it would be an absurdity, in terms, to affirm to the contrary. *Smith* v. *Union Bank of Georgetown, 5 Peters 518.* It may be considered as part of the settled jurisprudence of this country, says Chancellor Kent, that personal property, as against creditors, has locality, and the *lex loci rei sitæ* prevails over the law of the domicile with regard to the rule of preferences in the case of insolvents' estates. The laws of other governments have no force beyond their territorial limits ; and, if permitted to operate in other states, it is upon a principle of comity, and only when neither the state nor its citizens would suffer inconvenience from the application of the foreign law. *2 Kent's Com. 406.* And

in *Moore* v. *Bonnell,* 2 *Vr. 90, 94,* Chief-Justice Beasley, speaking for the supreme court, said :

"In my opinion, it has been rightly held that the law of comity does not prevent an independent government, in the exercise of its undoubted authority, from effectuating its own local policy with regard to the property of [an insolvent] debtor found within its territory."

It is obvious that a transfer of title, by operation of law, can only be effected within the limits of the territory where the law prevails ; and, as the laws of a state have no extra-territorial force, it follows that the title to property located in one state cannot be passed by force of the laws of another. In such cases the law operates, if at all, on the property ; and if the property is without the territorial limits of the state whose legislature enacted the law, it is plain that the law can have no effect upon it, except in virtue of the comity or courtesy which prevails among different nations and states by force of international law. The boundaries of this comity, I think, are very clearly defined. No state is bound to give effect to the law of a foreign state when, to do so, will prejudice either the rights of its citizens or the interests of the state ; but, on the contrary, each state is bound to give its citizens the full benefit of all the remedies and securities provided by its laws. *Hoyt* v. *Thompson's Exr.,* 19 *N. Y. 207; Willitts* v. *Waite,* 25 *N. Y. 577; Kelly* v. *Crapo,. 45 N. Y. 86.* But where a transfer of property is valid by the *lex loci,* whether it be effected by the act of the debtor, or by operation of law, no just rule of comity requires the courts of the state where the property happens to be located, to adjudge such transfer to be invalid, at the instance of citizens of other states, simply on the ground that it is incompatible with its laws. For example : A transfer of property located here, made by a citizen of New York, which, though inconsistent in substantial respects with the provisions of our law, yet if valid by the law of New York, will be enforced here against everybody but the citizens of this state. This is now the established doctrine of the courts of this state. *Bentley* v. *Whittemore,* 4 *C. E. Gr.* 462; *Moore* v. *Bonnell, ubi supra.*

Applying this rule to the case in hand, it is obvious that if the defendant had brought its action in New York, in its own name, it would not have been permitted to proceed against the property of the bank located in New York, as though the title to it stood unaffected and unchanged, but it would have been held bound by the law of its domicile. By that, the title to the property in question was vested in the petitioner for the equal benefit of all creditors occupying the same rank. In a case in all material respects precisely similar, the courts of New York have held that a creditor who, by legal proceedings instituted in another state, had put himself in possession of the property of an insolvent debtor, which had been previously assigned pursuant to the laws of that state, acquired no title thereto against the assignee, and that the assignee was entitled to recover it in an action of trover. *Van Buskirk* v. *Warren, 34 Barb. 457; S. C., 13 Abb. Pr. 145.*

The fact that the defendant assigned its claim to a person who, according to the rules of comity, was entitled to greater consideration and a higher position before the courts of New York than it was, adds nothing to the strength of its claim, nor should that fact induce the court to award it anything to which it was not entitled by strict law.

Up to this point it has been assumed that the appointment of the petitioner as receiver, *ipso facto*, invested him with title to the property of the bank. The statute does not expressly declare that such change of title shall be effected by his appointment, but simply says that he shall have power and authority to take possession of the property of the corporation, and to sell and convey or assign it. *Rev. 189 § 72.* In this respect it differs materially from the recent bankrupt law, under which the registers in bankruptcy were given authority to transfer the property of bankrupts to their assignees; and also from our statute regulating proceedings against insolvent debtors, which directs that the debtor shall, before his discharge, execute an assignment of his property to the assignee appointed by the court. *Rev. 499 § 11.* Both of the statutes last named plainly provide that the debtor or owner shall be divested of title, and that his assignee

shall be invested with it.  They do something more than simply put the debtor's property *in custodia legis*.  Not so, however, with the statute under consideration.  That merely confers a right to take possession and power to sell.  It does not change the title, but leaves it in the same condition as the title to property seized under execution is left ; the law takes custody of the property, leaving the title unchanged, until a sale becomes necessary.  In such cases, no change of title occurs until sale is made.  The officer has merely a power of sale, but until the power is exercised the title remains as it was before seizure.  If the defendant in execution pays the debt, the writ becomes inoperative ; the law then relaxes its grasp, and the defendant's title to the property at once becomes as perfect as it was before seizure.  So, too, if the action in which a receiver is appointed is dismissed and the receiver discharged, no act of transfer is required to give or restore title to the corporation.  By the dismissal of the action, the court renounces its power over the property, and the corporation resumes possession, not in virtue of a new or restored title, but in virtue of a previous unchanged title.

This was the construction given to this statute as early as 1843.  Chancellor Pennington, in *Willink* v. *Morris Canal and Banking Company, 3 Gr. Ch. 377*, held that the appointment of a receiver did not effect a change in the title to the property of an insolvent corporation, but merely put him in the place of the directors or managers, and simply invested him with a naked power of sale.  Chancellor Halsted, however, in the subsequent case of *Corrigan* v. *Trenton Delaware Falls Company, 3 Hal. Ch. 489*, held that the appointment of a receiver operated, by force of the statute, as a conveyance to the receiver, but this opinion was expressed without attempting to show that it was warranted by the language or purpose of the statute, and, it would seem, in ignorance of the prior adjudication.  When the language of the statute under consideration is contrasted with that of the two kindred statutes before referred to, it seems to be very clear that the interpretation given to it by Chancellor Pennington is the one that must prevail.

So far, the case has been considered as though the fact was

definitely established that the payment made by the National Park Bank to the defendant was made under compulsion of law. The petition avers that by means of the judgment recovered in New York, and proceedings subsequently had thereon, the defendant received from the National Park Bank a certain sum of money, being part of the amount due from the latter bank to the State Bank. The answer simply says that the defendant has been informed that subsequent to the recovery of the judgment, the National Park Bank paid it. No proofs were offered on this point, except to show that in the account kept by the National Park Bank the State Bank stands charged with the amount of the judgment. In this condition of the proofs there is certainly no warrant for a finding that the payment to the defendant was made pursuant to any authority whatever. It would seem to have been purely officious. If so, it is clear the debt is not discharged, and the receiver has a perfect remedy against the original debtor. A debtor cannot discharge his liability to his creditor by seeking some person whom his creditor happens to owe and paying his debt to him.

But if my judgment was for the petitioner on all other points, I think it is clear, according to the established practice of the court, that the court could give the petitioner no relief on the present record. He is here by petition, and not by bill. So far as I am aware, no instance exists in which relief of the character sought, and on a case similar to that exhibited here, has been awarded on a petition. It is undoubtedly true that there are cases in which a suitor may institute a suit or proceeding in this court by petition, but I think the use of such process, for such a purpose, must be held to be limited to those instances in which the legislature has expressly authorized its use, or where its use has the sanction of long-established practice. Suits for divorce may be commenced by petition (*Rev. 316* § *7*), and so may a suit to procure an adjudication of insolvency against a corporation. (*Rev. 189* § *70*), and proceedings for the sale of lands limited over may be begun in the same manner (*Rev. 1052* § *42*). And by the long-established practice of the court, infants may have guardians assigned for them, and orders for maintenance made,

under proceedings instituted by petition, and without bill. *Ex parte Salter, 3 Br. C. C. 500 ; Ex parte Mountfort, 15 Ves. 445 ; In re Bostwick, 4 Johns. Ch. 100.*

Except in these and a few other instances, I think the use of a petition as the initial process in an equity suit or proceeding is without precedent, and contrary to the uniform course of practice. It is ordinarily used for interlocutory purposes. Chief-Justice Shaw defined it as follows :

"A petition, in legal language, describes an application to a court, in writing, in contradistinction to a motion, which may be made *viva voce.*" *Bergen* v. *Jones, 4 Metc. 371.*

This definition was adopted in *Shaft* v. *Phœnix Mut. Life Ins. Co., 67 N. Y. 544.* Mr. Daniell, in his treatise on Practice, says :

"Interlocutory applications, when made *viva voce,* are called motions; when made in writing, they are called petitions. There does not appear to be any distinct line of demarkation between the cases in which they should be made by motion and in which they should be made by petition, but, as a general rule, where any long or intricate statement of facts is required, the application should be made by petition, while, in other cases, a motion will be sufficient." *2 Dan. Ch. Pr. 1587.*

The same office is assigned to petitions by other writers in equity practice. *1 Smith's Ch. Pr. 70 ; Adams's Eq. 348 ; 1 Barb. Ch. Pr. 579.* As a general rule, a petition cannot be presented in a cause until the bill has been filed. *2 Dan. Ch. Pr. 1604.* Petitions for leave to sue *in forma pauperis* are an exception to this rule. *1 Barb. Ch. Pr. 579.* By Lord Bacon's eightieth ordinance, it is ordained that no final order shall be granted on petition. *2 Montague's Life of Bacon 484.*

The petitioner, although an officer of this court, is entitled to no privilege here that would not be accorded to any other suitor. In seeking relief here he must come by the same process that other suitors are required to use, and must prosecute his suit in the same manner that any other suitor would be required to do. The rules of practice are as much a law unto him as to other

suitors, and while the present rules of practice remain in force, no suitor can have relief, on a case like that on which the petitioner's claim to relief rests, unless he seeks it by formal bill.

For these reasons, I think the petition must be dismissed, with costs.